457 So.2d 936 (1984)
William A. GRIFFIN and Irene C. Griffin
v.
Joe C. WARE and Mike Wootton, a Partnership, d/b/a Ware & Wootton, General Adjusters.
No. 55092.
Supreme Court of Mississippi.
October 10, 1984.
W.E. Gore, Jr., Harry Kelley, Jackson, for appellants.
Michael S. Allred, David A. Barfield, Satterfield & Allred, Jackson, for appellees.
Before WALKER, P.J., ROBERTSON and SULLIVAN, JJ., and SUGG, Retired Supreme Court Justice.
SUGG, Retired Supreme Court Justice, for the Court:[1]
The question on this appeal is whether adjusters employed by an insurer, who were not parties to the agreement for insurance, are subject to an implied duty of good faith and fair dealing to the insured. We answer the question in the negative and affirm the judgment of the trial court.
Appellees were employed by the National Flood Insurance Program (hereafter Program) as adjusters to investigate a claim for damages to a home formerly owned by appellants under a flood insurance policy *937 issued by the Program. Appellants settled with the Program on December 1, 1982, for $2,876.90.
After obtaining the settlement appellants sued appellees in the Circuit Court of the First Judicial District of Hinds County. Appellants charged that they formerly owned a home in Jackson, Mississippi, and had a flood insurance policy with the Program on or about May 1979, and at all times material thereafter.
Appellants also alleged:
1. The structure and foundation of their home was damaged by an underground flow of water which came about during a fifteen inch rain in April of 1979 which preceded the April flood of 1979, at which time the ditch next to their residence had "gotten out of its banks and came within approximately 2" of coming into the residence."
2. Appellants discovered damage in the spring of 1981, jacked up the foundation, and inserted wooden blocks in an effort to realign the floors and sills of their home.
3. In 1982, appellants again noticed that a door in the house was misaligned and difficult to close. Appellants again jacked up the house and inserted more shims and blocks.
4. As a result of the continued settling of the foundation appellants notified Robinson & Julienne Insurance Agency, agents for the National Flood Insurance Program, about the problem and were advised that an adjuster would examine the house.
5. Appellees were employed to adjust appellants' claim. According to Exhibit "2" annexed to the bill of complaint, appellees were assigned the responsibility of adjusting the claim on May 5, 1982, and sent Jack A. Cameron, a certified structural engineer, to inspect the premises in May 1982. Cameron made a report to appellees on May 10, 1982, a copy of the report being annexed as Exhibit "1" to the complaint.
6. Appellees wrote the Program on May 19, 1982, enclosed a copy of the Cameron report, and recommended that the claim be denied.
7. Appellants were able to get their claim reconsidered and settled with the Program based on the report of another adjuster.
8. Appellants charge that appellees acted in bad faith and, "deliberately, maliciously and willfully stated that the damage was caused by Yazoo clay" when appellees should have known that the damage was not caused by Yazoo clay but by the sub-surface flow of water.
Appellees filed a motion to dismiss and for a judgment on the pleadings under Rule 12(b)(6), or in the alternative, for a summary judgment under Rule 56. Appellees alleged in their motion: (1) the complaint fails to state a claim or cause of action against the defendants upon which relief can be granted; (2) Defendants were employed by National Flood Insurance Program to investigate the claim of the plaintiffs and were at all times the known agents of a disclosed principal and at all times the defendants represented themselves to the plaintiffs to be such agents of a disclosed principal; (3) the complaint alleges various causes of action sounding in breach of contract and plaintiffs never had any contract with these defendants; (4) there was no privity of contract between plaintiffs and defendants and defendants owed no contractual or fiducial duties to the plaintiffs and are not therefore liable to the plaintiffs; (5) the plaintiffs contract was with National Flood Insurance program and any cause of action plaintiffs may have for breach of such contract or an independent tort arising out of the breach of such contract is a cause of action against National Flood Insurance Program and not against the defendants who were at all times the known agents of a disclosed principal and as such have no liability for the acts or omissions of the principal.
Attached to the motion was the following affidavit of Joe C. Ware:
1. I am Joe C. Ware, one of the partners of Ware and Wootton, General Adjusters, and as such I have full authority *938 to make this affidavit on behalf of said partnership and in my own behalf.
2. On or about May 4, 1982, Ware and Wootton, General Adjusters was Flood Insurance Program to investigate a claim of flood damages at 224 North Sunset Terrace, Jackson, Mississippi, the former home of William Griffin and Irene C. Griffin.
3. I conducted the investigation and at all times represented myself and Ware and Wootton, General Adjusters, to be the agents of National Flood Insurance Program.
4. Neither Ware and Wootton, General Adjusters, nor I ever contracted with the plaintiffs to do anything. Ware and Wootton, General Adjusters and my only obligation was to our principal, National Flood Insurance Program.
5. All of Ware and Wootton, General Adjusters and my actions were taken on behalf of our disclosed principal, National Flood Insurance Program.
The Circuit Court, Honorable Charles G. Barbour presiding, entered summary judgment for appellees. The 12(b)(6) motion of appellees was treated as one for summary judgment and the court considered matters outside the pleadings which were presented to it. The court found that appellees were entitled to a judgment as a matter of law and no genuine issue of material fact existed. Rule 12 provides in part as follows:
(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
(6) Failure to state a claim upon which relief can be granted,
... If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56; ...
The trial court properly treated the motion as a motion for summary judgment under Rule 56 and was authorized to consider the affidavit of Ware in passing on the motion. Appellants could have filed a counter affidavit, but instead of doing so elected to stand on their complaint. This put the question in this case squarely before the trial judge.
The gravamen of the action against appellees was that they made false reports to their principal and thereby committed a tort against appellants. Stated differently, appellants charge appellees with a tort because appellees breached an implied duty of good faith and fair dealing which they owed appellants.
The only Mississippi case we find dealing with the liability of an adjuster to an insured is Progressive Casualty Insurance Company v. Keys, 317 So.2d 396 (Miss. 1975). Keys filed suit against Progressive Casualty Insurance Company, General Adjustment Bureau, Inc., and Chesley Price, individually and as agent of the insurance company and General Adjustment Bureau. Keys alleged he had a policy of insurance with Progressive which provided collision coverage on his vehicle. He had a collision which totally demolished his vehicle and it became necessary to employ an attorney to secure a settlement with Progressive. General Adjustment was employed by Progressive to adjust the claim on the policy on which the suit was based and Price was the agent of General Adjustment.
After many months of negotiations Price made a firm offer of settlement which was accepted by Keys' attorney on behalf of Keys. Keys charged General Adjustment and Price, while acting as agent for Progressive, with "willful and wanton breach of contract in that after said offer was made and accepted, they withdrew the offer and breached the contract."
*939 Keys also charged that Progressive, "by and through its agents has continuously delayed, harassed, embarrassed and flatly refused to make a settlement of the claim and that the defendant's actions in refusing to pay Plaintiff his money in accordance with the terms of his policy were deliberate and malicious."
Keys sought actual damages in the amount of $2,500.00 and punitive damages in the amount of $7,500.00. In his brief Keyes stated an independent tort was committed by the agent of the insurer, General Adjustment, "in its negotiation with counsel for appellee in settling the loss of appellee... ."
General Adjustment Bureau and Chesley Price filed a motion to dismiss for the reason that the declaration did not state a cause of action against them on which relief could be granted. The trial court overruled the motion and on appeal this court reversed and held, "The trial court should have sustained the motion of General Adjustment Bureau and Chesley Price to be dismissed from the case at the beginning of the trial because ... the declaration did not set out facts sufficient to sustain a tort action."[2] 317 So.2d at 398.
The court did not give any reason for its holding, but, at the very least, the case establishes the principle that an adjuster is not liable to an insured for his actions in adjusting a claim for an insurer.
However, the precise question stated above was addressed by the California Supreme Court in Gruenberg v. Aetna Insurance Company, et al., 9 Cal.3d 566, 108 Cal. Rptr. 480, 510 P.2d 1032, (1973). Gruenberg owned property which was insured for $35,000 by three different insurance companies. A fire occurred at the premises at which time Gruenberg went to the scene, became involved in an argument with a member of the arson detail and was placed under arrest. On the next day, the insurance companies hired P.E. Brown and Company, Adjusters, to investigate the fire and inspect the premises. Carl Busching, a claims adjuster for Brown, went to the premises and stated to the arson investigator that Gruenberg had excessive coverage under his fire insurance policies. A few days later Gruenberg was criminally charged with arson and defrauding an insurer.
The insurance companies retained a law firm to represent them and one of the attorneys for the insurance company demanded that Gruenberg appear and submit to an examination under oath and to produce documents as provided in the policies. Gruenberg's attorney responded that he had advised Gruenberg not to make any statements concerning the fire loss while criminal charges were pending. The attorney for the insurance companies then advised the attorney for Gruenberg that the companies were denying liability because of Gruenberg's failure to submit to an examination under oath and to produce documents. Later the criminal charges against Gruenberg were dismissed and his attorney advised the insurance companies that Gruenberg was then prepared to submit himself for an examination. The insurance companies advised the attorney for Gruenberg that they would stand by their position and deny liability because of Gruenberg's earlier failure to appear and produce documents. The adjusters and the attorneys were named as defendants along with three fire insurance companies.
All defendants filed a demurrer which was sustained but on appeal the court reversed the demurrer as to the insurance companies but affirmed as to the other defendants.
The California Court held:
... in every insurance contract there is an implied covenant of good faith and fair dealing. The duty to so act is imminent in the contract whether the company is attending to the claims of third *940 persons against the insured or the claims of the insured itself. Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.
In the case at bench plaintiff has alleged in essence that defendants wilfully and maliciously entered into a scheme to deprive him of the benefits of the fire policies in that they encouraged criminal charges by falsely implying that he had a motive to commit arson, and in that, knowing plaintiff would not appear for an examination during the pendency of criminal charges against him, they used his failure to appear as a pretense for denying liability under the policies. We conclude therefore that while the complaint is far from a model pleading, it does allege in substance a breach on the part of defendant insurance companies of their duty of good faith and fair dealing which they owed plaintiff... .
With regard to the defendants other than the three insurance companies, we reach a different result. Plaintiff alleges that Brown, the insurance adjusting firm, and its employee, Busching and Cummins, the law firm, and its employee, Ricketts, were the agents and employees of defendant insurers and of each other and were acting within the scope of that agency and employment when they committed the acts attributed to them. However, plaintiff contends that these non-in-surer defendants breached only the duty of good faith and fair dealing; therefore, we need not consider the possibility that they may have committed another tort in their respective capacities as total strangers to the contracts of insurance. Obviously, the non-insurer defendants were not parties to the agreements for insurance; therefore, they are not, as such, subject to an implied duty of good faith and fair dealing. Moreover, as agents and employees of the defendant insurers, they cannot be held accountable on a theory of conspiracy... .
* * * * * *
In summary, we conclude that plaintiff has stated facts sufficient to constitute a cause of action in tort against defendant insurance companies for breach of their implied duty of good faith and fair dealing;... On the other hand, since the remaining defendants were not subject to the implied duty arising from the contractual relationship, we conclude that the complaint does not state sufficient facts to constitute a cause of action against them and that the judgment of dismissal in their favor was proper.
Accord: Timmons v. Royal Globe Ins. Co., 653 P.2d 907, 912 (Okl. 1982); Egan v. Mutual of Omaha, 24 Cal.3d 809, 169 Cal. Rptr. 691, 620 P.2d 141 (Cal. 1979); Austero v. National Casualty Co., 62 Cal. App.3d 511, 133 Cal. Rptr. 107 (1976); Iversen v. Superior Court of Los Angeles Co., 57 Cal. App.3d 168, 127 Cal. Rptr. 49.
Although we are not obliged to follow the decisions of courts in other jurisdictions, when we find the legal reasoning they have employed is compelling, we do not hesitate to adopt it. Berkline Corporation v. Bank of Mississippi, 453 So.2d 699 (Miss. 1984). We find the rule stated in Gruenberg and its progeny sound and supportive of our holding in Progressive Casualty Insurance Company v. Keys, 317 So.2d 396 (Miss. 1975). We therefore hold that adjusters employed by an insurer, who were not parties to the agreement for insurance, are not subject to an implied duty of good faith and fair dealing to the insured. In the case before us, appellees were employed by the insurer for the sole purpose of investigating appellants' claim for flood damages. Appellees were not parties to the insurance contract between appellant and their insurer, hence were not subject to an implied duty of good faith and fair dealing with appellants. Appellees' duty was to their principal, not to appellant.
The trial judge treated the 12(b)(6) motion of appellants as a motion for summary judgment under Rule 56. Having determined that appellees incurred no liability to *941 appellants, we hold the judge properly entered summary judgment because there was no genuine issue as to any material fact and appellees were entitled to a judgment as a matter of law.
AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
PATTERSON, C.J., and BOWLING and DAN M. LEE, JJ., not participating.
NOTES
[1] Sitting pursuant to Mississippi Code Annotated, Section 9-3-6 (Supp. 1982). The above opinion is adopted as the opinion of the Court.
[2] The court also said the motion should have been sustained because the suit was based upon a contract and upon a tort which could not be maintained in one cause of action, but noted in footnote 1 that the law had been changed to permit a suit in contract and in tort in one action.