**Paul V. O'MALLEY and Douglas Talbot, d/b/a "The Bowie Knife", Plaintiffs,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant.**

**Andre C. FARISH, Plaintiff,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, et al., Defendants.**

**Civ. A. Nos. W82–0007(B), W82–0008(B).**

United States District Court, S.D. Mississippi, W.D.

Feb. 7, 1985.

John E. Mulhearn, Jr., Mulhearn & Mulhearn, John R. Kingsafer, Hudson & Kingsafer, Ltd., Natchez, Miss., for plaintiffs.

James L. Carroll, Virginia Munford, Watkins & Eager, Carey E. Bufkin, Shell, Buford, Bufkin, Callicutt & Perry, Jackson, Miss., for defendants.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

BARBOUR, District Judge.

The Court, after consolidating these cases for trial and bifurcating the trial on

the issue of whether Defendants are liable under certain insurance policies for losses sustained by Plaintiffs from the issue of Defendants' alleged bad faith dealings with Plaintiffs, heard the testimony and received the evidence presented by both sides at a trial commencing on January 28, 1985, and continuing through January 30, 1985. The Court heard the arguments of counsel, received trial briefs on the issues and took the case under advisement. Now having considered the evidence and the law, the Court makes the following Findings of Fact:

1. The Defendant, USF & G issued an insurance policy no. FP–7035487 to Plaintiffs, Paul O'Malley and Doug Talbot d/b/a The Bowie Knife, providing coverage from March 26, 1980, to March 26, 1983, in the total sum of $7,000.00 on the contents of The Bowie Knife Building, subject to the terms and provisions thereof.

2. The Defendant, USF & G, issued its policy no. FC 19526 to the Plaintiffs, A.C. Farish and Paul V. O'Malley d/b/a Under the Hill Club, providing coverage in the total amount of $50,000 on the building, and $10,000 (with 75% co-insurance) on the contents of the building, subject to the terms and provisions thereof, for the policy period from September 26, 1977 to September 26, 1980.

3. The Defendant, Western, issued its policy no. OC–793398 to the Plaintiffs, A.C. Farish and Paul V. O'Malley d/b/a Under the Hill Club, in the same amount as the above mentioned USF & G policy covering that property, with the same co-insurance applicable on the contents, for the same policy period, subject to the terms and provisions of that policy.

4. The Bowie Knife and the Under the Hill Club are a sandwich shop and a bar located in the old historic section of Natchez, Mississippi, known as Natchez Under the Hill. This area lies on the east bank of the Mississippi River and below the tall (between 200 and 300 feet high), near vertical bluff on top of which sits the town of Natchez itself. The businesses occupied restored, brick buildings the rear of which were against the toe of the bluff.

5. On March 29, 1980, at about 3:35 p.m. a huge section of the bluff, estimated to be approximately 50 feet wide by 20 feet high by 10 feet deep and weighing 800,000 to 1,000,000 pounds, broke loose and slid with accompanying trees and other debris down the bluff and into and through the two buildings, totally destroying them and their contents and killing two people.

6. The Defendants denied Plaintiffs' claims under the policies on the basis of the water exclusion portions of the policies asserting that the bluff had been weakened by excessive rainfall and that it finally collapsed in a mudslide. The policies of insurance all contained the following language:

Water Exclusions:

This Company shall not be liable for loss caused by, resulting from, contributed to or aggravated by any of the following— (a) flood, surface water, waves, tidal water, or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not; (b) water which backs up through sewers or drains; (c) water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basements, or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors.

7. Plaintiffs asserted that high winds blowing on trees growing on the bluff loosened their root structure and that this action triggered the mudslide. Plaintiffs claim that the cause of the mudslide and resulting loss was windstorm.

8. It is undisputed that Natchez had experienced excessive rains during the late fall and winter of 1979 and 1980. 15.04 inches had fallen in the month of March, 1980, alone. Natchez received 4 inches of rain on the day of the slide.

9. The bluff towering over Natchez Under the Hill is composed of a wind-deposited soil known as Loess. Loess has the

unusual properties of being extremely stable when dry and of being extremely unstable when saturated with moisture.

10. Before the mudslide on March 29, large trees grew on the bluff behind and above the Bowie Knife and the Natchez Under the Hill Club, the tops of some of which reached above the upper edge of the bluff. If, in fact, the wind was blowing at the time the mudslide started, it was blowing from the southeast and a southeasterly wind cannot be felt in Natchez Under the Hill because it is protected by the bluff.

11. A conflict exists in the evidence as to whether the wind was blowing at about 3:35 on March 29. Plaintiff, Paul O'Malley, testified there was a blustering wind on top of the bluff when he left the Bowie Knife with his grandchildren at 3:00. Jerry Strahan, the general manager of the Bowie Knife, testified he drove to the top of the bluff at 3:30 and that a gust of wind which he estimated to be blowing at 35–45 miles per hour shook his truck. Charlie Haile, the insurance adjuster assigned to investigate the loss, testified it had been windy around noon but was calm when he left his Natchez office between 3:25 and 4:00. Official weather records show no unusual or damaging winds on March 29. There was evidence that there were no other windstorm claims for March 29, 1980, within 4 miles of Natchez Under the Hill investigated by either Defendant, U.S.F. & G. or by the Natchez office of Crawford and Company, the adjusting company for whom Haile worked. Steve Stevens was the only unaligned witness who testified. He operates a boat dock and fueling depot at the base of Silver Street in Natchez under the Hill. Stevens was on the river earlier in the day pursuant to his job of checking oil wells and noted high winds. He testified he did not note any high winds at the time of the mudslide although he admitted that the bluff protected Natchez Under the Hill from southeast winds. The Court concludes from a preponderance of the credible evidence that there were no unusually high winds at the time of or immediately preceding the mudslide.

12. Each side presented expert witnesses who, predictably, presented conflicting opinions. All of the experts agreed that the bluff had been saturated by the excessive rains and would have been in a weakened and precipitous condition. All agreed that excessive moisture adds extra weight to the soil and that the Loess becomes unstable when wet. The Plaintiffs' expert testified that in his opinion the wind against the trees whose tops rose above the bluff blew their roots loose, thus triggering not only a slide of those trees but also of the section of the bluff above them.

13. Testimony of experts for the Defendants and photographs of the slide area indicate the fracture plane, the area from which the slide moved, was relatively smooth, indicating that the trees slid with the slide rather than having been pulled out from the bluff by the wind.

14. Testimony was admitted of a similar slide which had occurred on April 22, 1979, which damaged the Silver Street, Ltd. building which adjoins the Bowie Knife. Plaintiffs contend that the payment of the loss by Defendant, U.S.F. & G. under the windstorm provisions of that policy constitutes an admission in regard to the present case. That slide occurred after rains in excess of 6 inches in the preceding 24 hour period. The Court is, of course, not called upon to rule on that matter, but considers that payment by U.S.F. & G. non-controlling here.

15. Defendants' expert witness compared the forces of a 35–45 miles per hour wind upon a tree with the estimated weight of the slide mass and found those forces to be inconsequential.

16. The apparently unbiased testimony of Steve Stevens was supportive of the opinions of the experts presented by the Defendants. About five minutes before the mudslide in question, Stevens was near his boat dock and noticed several small slides occurring on the bluff. He went to the Silver Street, Ltd. to warn the two ladies employed there of the danger which was apparent to him. In addition, he advised two other ladies not to park in a

particular parking lot for the same reason. Stevens further testified that an earlier major slide had occurred after it had been "raining, raining, raining." Stevens, the only eyewitness to the actual mudslide, was attracted by the crack of exploding power lines and saw the mass of mud sliding down the bluff preceded by the roots of a large tree. Plaintiffs argue that the fact that the tree roots came down the bluff first supports their theory but could not present a plausible explanation of why the wind would not have blown the top of the tree down the hill first.

17. The Court concludes from a preponderance of the credible evidence that the sole cause of the mudslide was the excessive rains which had penetrated and soaked below the surface of the ground of the bluff, weakening it, adding weight and causing it to collapse. The Court finds that the mudslide was not proximately caused or proximately contributed to by windstorm. Even if there were a strong wind (which the Court has found did not exist) and even if it is assumed the wind exerted some causative force on the mudslide (which the Court has found not to be the case) such windstorm was not the dominant and efficient cause of the losses incurred.

The Court accordingly reaches the following Conclusions of Law based upon its Findings of Fact:

1. The policies in question exclude losses "caused by, resulting from, contributed to or aggravated by ... water below the surface of the ground...."

2. The losses incurred by the Plaintiffs were excluded by the policies and the Plaintiffs should recover nothing thereunder.

The Plaintiffs also alleged as a separate and independent ground for recovery a tort for the Defendants' bad faith failure to properly investigate and pay the losses incurred by the Plaintiffs. In support of this theory of recovery, Plaintiffs plead primarily, but among other things, that Charlie Haile, an experienced insurance adjuster with Crawford and Company, was hired by Defendants to investigate the losses and that when Haile reported that his investigation revealed the insurance companies to be liable under the policies, the Defendants hired another adjuster. Plaintiffs claim a right to recover for this alleged bad faith even in the absence of their prevailing on the merits, citing *Gruenberg v. Aetna Insurance Company*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973) and *Griffin v. Ware*, 457 So.2d 936 (Miss. 1984).

As stated above, this Court bifurcated the trial of this cause and only heard testimony and received evidence on the issue of whether or not the losses were covered by the policies. The question now before this Court is whether the law of the State of Mississippi allows recovery for a bad faith tort alleged to have been committed by an insurance company when the insured fails to prevail on its claim for its loss under the policy. This Court being *Erie* bound, holds that it does not.

Although the decision of the California court in *Gruenberg* may be read to imply a separate cause of action arising in tort whether the insurer is liable on the underlying policy contract or not, no Mississippi court has embraced this doctrine. The Plaintiffs' contention that *Griffin v. Ware* adopts the *Gruenberg* doctrine is based on a misreading of *Griffin*. The holding of *Gruenberg* adopted by the *Griffin* court was that *non-insurer defendants* were *not* bound by any duty of good faith and fair dealing to the insureds.

The Plaintiffs have not cited, and the Court has not discovered on its own search, any cases in which a court applying Mississippi law has held that there may be a viable cause of action for bad faith failure to pay where the insurer prevails on the question of policy coverage. In fact, all decisions involving Mississippi law indicate that the insured must establish not only that the insurer was liable on the policy but that the insurer had no "arguable reason" for denying coverage.

The general rule which appears to prevail in this jurisdiction is that if, as a matter of law, there is an "arguable rea-

**60**

son" for the insurance company to deny liability on the policy, punitive damages are improper regardless of whether the insurance company prevails or loses on the issue of liability. *See Henderson v. United States Fidelity & Guaranty Co.,* 620 F.2d 530, 536 (5th Cir.1980); *Reserve Life Insurance Co. v. McGee,* 444 So.2d 803, 809 (Miss.1983); *Standard Life Insurance Co. of Indiana v. Veal,* 354 So.2d 239, 248 (Miss.1978).

*O'Connor v. Equitable Life Assur. Soc. of U.S.,* 592 F.Supp. 595, 597 (N.D.Miss.1984) (summary judgment for insurer on issue of bad faith). *See also, Blue Cross & Blue Shield of Mississippi, Inc. v. Campbell,* 466 So.2d 833 (Miss.1984) (J.N.O.V. for insurer on issue of extra-contractural damages); *Consolidated American Life Insurance Co. v. Toche,* 410 So.2d 1303, 1306 (Miss.1982) (no punitive damages where insurer has arguable reason to deny claim); *Peel v. American Fidelity Assurance Co.,* 680 F.2d 374, 377 (5th Cir.1982) (same).

Accordingly, there is no need to consider any evidence of alleged bad faith on the part of the Defendants and the counts of the Complaint dealing with bad faith should be finally dismissed with prejudice.

The Court accordingly holds that the Plaintiffs are entitled to recover nothing and that the Defendants in both cases should be finally dismissed with prejudice with costs to be assessed to Plaintiffs.

Attorneys for the Defendants are to prepare a final judgment consistent with these Findings of Fact and Conclusions of Law and present it to the Court within five days as required by the Local Rules of this Court.