Paul V. O'MALLEY, et al.,
Plaintiffs-Appellants,

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Defendant-Appellee.

Andre C. FARISH, Plaintiff-Appellant,

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY, et al.,
Defendants-Appellees.

No. 85–4138
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 18, 1985.

John R. Kingsafer, Mulhearn & Mulhearn, John Ernest Mulhearn, Jr., Natchez, Miss., for plaintiffs-appellants.

Watkins & Eager, James L. Carroll, Virginia T. Munford, Jackson, Miss., for defendant-appellee.

Before GEE, RANDALL and DAVIS, Circuit Judges.

PER CURIAM:

Appellants Andre C. Farish, Paul V. O'Malley and Douglas Talbot appeal from a ruling of the district court, 602 F.Supp. 56, denying them recovery under insurance policies issued by Appellee United States Fidelity and Guaranty Company. Because of the reasons discussed below, we affirm the judgment of the district court.

## I.

Appellant Farish owned a building known as the "Under the Hill Club" which was insured under an extended coverage policy issued by Appellee United States Fidelity and Guaranty Company ("U.S.F. & G."). Appellants O'Malley and Douglas leased a building in which they ran a sandwich shop, "The Bowie Knife," the contents of which were insured by U.S.F. & G. Both the Under the Hill Club and the Bowie Knife were located in the old historic section of Natchez, Mississippi, known as Natchez Under the Hill. This area lies on the east bank of the Mississippi River and below a tall, near vertical, bluff, on top of which sits the town of Natchez itself. The businesses of Farish, O'Malley and Talbot (collectively "O'Malley") occupied restored, brick buildings which lay against the base of the bluff.

On March 29, 1980, at about 3:35 p.m., a huge section of the bluff, estimated to be approximately fifty feet wide by twenty feet high by ten feet deep, and weighing 800,000 to one million pounds, broke loose and slid with accompanying trees and other debris down the bluff, into and through the two buildings, destroying them and their contents and killing two people. U.S.F. & G. denied recovery, claiming no coverage and citing a water damage exclusion in the policies. U.S.F. & G. argued that excessive rainfall had weakened the bluff, causing it finally to collapse in a mudslide. O'Malley contended that high winds blowing on trees growing on the bluff had lossened their root structure, triggering the mudslide. If the cause of the mudslide and resulting loss were windstorm, it would have been covered by the insurance policies.

Filed first in state court, the cases were consolidated and removed to federal district court, where they were tried without a jury. After viewing evidence and hearing testimony, the district court decided that the sole cause of the mudslide was the excessive rain which had penetrated and soaked the ground of the bluff, weakening it and causing it to collapse. The district court found that the policies in question excluded losses "caused by, resulting from, contributed to or aggravated by ... water below the surface of the ground ..." and concluded that the loss incurred by O'Malley was excluded by the policies. The district court refused to rule on O'Malley's claim that U.S.F. & G. had acted in bad faith by failing to investigate and pay for the losses properly. The district court bifurcated the trial, receiving evidence and testimony only on the issue of whether or not the losses were covered by the policies. As noted above, O'Malley failed to prevail on this initial issue of coverage. The court found that Mississippi law would not allow recovery for a bad faith tort alleged to have been committed by an insurance company when the insured failed to prevail on his claim for loss under the policy. The court therefore refused to hear evidence of bad faith.

O'Malley raises six grounds of appeal. First, O'Malley contends that the district court's findings of fact, concluding that water damage was the sole cause of the mudslide, are clearly erroneous. O'Malley also finds fault with the court's construction of the insurance policies: O'Malley claims that coverage existed for his loss. O'Malley additionally objects to the bifurcation of the coverage and bad faith issues, contending that the district court committed error in refusing to permit him to pursue his bad faith claim against U.S.F. & G. O'Malley points out alleged error in the district court's discovery and evidentiary rulings. O'Malley complains that the court should not have denied him discovery of a file involving an earlier mudslide loss on April 22, 1979. The court also should have admitted an engineering report into evi-

dence and permitted cross-examination with reference thereto. Finally, O'Malley asserts that the district court committed error by denying him a jury trial. We disagree with these contentions. We will not turn to a discussion of each.

## II.

■ The findings of fact of the district court must be left undisturbed unless determined to be clearly erroneous under Fed.R.Civ.P. 52(a). A finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. *United States v. Yellow Cab Co.*, 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949). In addition, as the Supreme Court has recently observed,

> [W]hen findings are based on determinations regarding the credibility of witnesses, Rule 52 demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.

*Anderson v. City of Bessemer City, North Carolina*, — U.S. —, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) (*citing Wainwright v. Witt*, — U.S. —, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)).

■ We now turn to the question whether the district court's findings in the instant case are clearly erroneous as defined above. The court found that the mudslide was not proximately caused or proximately contributed to by windstorm. The court noted further:

> Even if there were a strong wind (which the Court has found did not exist) and even if it is assumed the wind exerted some causative force on the mudslide

(which the Court has found not to be the case) such windstorm was not the dominant and efficient cause of the losses incurred.

Record Vol. 3 at 888.

In support of its conclusion, the district court cited several factors. First, official weather records showed no unusual or damaging winds on March 29, 1980. Second, U.S.F. & G. and the Natchez office of the adjusting firm assigned to the instant case received no other local windstorm claims for March 29, 1980. The court placed emphasis upon the testimony of Steve Stevens, the "only unaligned witness who testified." Record Vol. 3 at 885. Stevens stated that earlier in the day he had been on the river checking oil wells and had noted high winds. He testified that he did not observe any high winds at the time of the mudslide, although he admitted that the bluff protected Natchez Under the Hill from southeast winds such as those alleged to exist on March 29, 1980. Finally, the court mentioned the expert witnesses employed by both sides, witnesses, who, predictably enough, presented conflicting opinions. The court chose to follow the reasoning of U.S.F. & G.'s witnesses. Their testimony, supported by photographs, indicated that excessive moisture and not wind caused the mudslide: "the fracture plane, the area from which the slide moved, was relatively smooth, indicating that the trees slid with the slide rather than having been pulled out from the bluff by the wind." Record Vol. 3 at 886.

O'Malley questions the court's interpretation of Stevens' testimony, adding that Jerry Straham, the only witness in a position to perceive the force of the wind on top of the bluff, testified that there "was a lot of strong winds." Record Vol. 5 at 83. O'Malley also disputes the relevance of official weather reports taken hours before the time of the mudslide, ten or twelve miles away from Natchez Under the Hill. In addition, O'Malley contends that companies other than those involved in the instant case might have received windstorm claims on the day in question. Finally,

O'Malley asserts the primacy of his expert witness' testimony.

After reviewing the record, we cannot say that the findings of the district court are clearly erroneous. Credible evidence was presented from which the court could have concluded that there was no strong windstorm on March 29, 1980. Three expert engineers testified that in their professional opinions, rainfall—not wind—caused the collapse by saturating the soil. Even O'Malley's expert admitted that this water was significant in the failure of the bluff. As noted above, where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. *Yellow Cab Co.*, 338 U.S. at 342. Jerry Strahan, the witness upon whose testimony O'Malley in large part relied, was employed by Appellant Talbot as general manager and is now his business partner. All other witnesses presented by O'Malley were similarly aligned with him through work or blood ties. The district judge had the advantage of observing the witnesses and passing on their credibility. The district court thus was well within its right in emphasizing the testimony of Stevens, as the "only unaligned witness who testified." As noted by the Supreme Court, "[w]hen findings are based on determinations regarding the credibility of witnesses, Rule 52 demands even greater deference to the trial court's findings." *Anderson*, 105 S.Ct. at 1512. In sum, we are left with a conviction that no mistake has been committed by the district court. The findings of fact must stand.

### III.

■ O'Malley next contends that the district court erred in construing the insurance policies to deny him coverage for his March 29, 1980, losses. The court, in its findings of law, concluded:

1. The policies in question excluded losses "caused by, resulting from, contributed to or aggravated by ... water below the surface of the ground...."

2. The losses incurred by the plaintiffs were excluded by the policies and the plaintiffs should recover nothing thereunder.

Record Vol. 3 at 888.

O'Malley claims that the exclusionary clause cited by the court is ambiguous. As we have observed in the past, a question of contract interpretation is a question of law, and we are not bound by the clearly erroneous standard of review on the question of ambiguity. *In re Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir.1981). After reviewing the contracts at issue here, however, we do not need to rule on the ambiguity of the exclusionary clause, for the contracts do not provide coverage for O'Malley's loss regardless of the interpretation given the exclusionary clause.

The policies issued to O'Malley were named peril policies covering fire and lightning damage. O'Malley paid for extended coverage, under which he received insurance "[a]gainst Direct Loss by Windstorm, Hail, Explosion, Riot, Riot Attending a Strike, Civil Commotion, Aircraft, Vehicles, and Smoke, Except as Hereinafter provided." Plaintiffs' Exhibit No. 1. The exclusion relevant to O'Malley's loss provided, in part:

> Water Exclusion: this Company shall not be liable for loss caused by, resulting from, contributed to or aggravated by any of the following ... (c) water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basements or other floors or through doors, windows, or other openings in such sidewalks, driveways, foundations, walls or floors.

Plaintiffs' Exhibit No. 1.

O'Malley, claiming that wind was the proximate cause of his loss, argues that the contributing cause of subsurface water in this case is not excluded by the above quoted language. The subsurface water in the instant case did not exert pressure on or flow, seep, or leak through sidewalks, driveways, basements, foundations, walls, or other floors. Nor did it flow, seep or

leak through doors, windows or openings. O'Malley reasons that the word "including" in the exclusionary clause is used in a restrictive sense: the items listed after the word "including" define by restriction the phrase "water below the surface of the ground." Since the record in this case lacks evidence of the specifically listed situations, the exclusionary clause does not apply. Rid of the exclusionary clause, O'Malley asserts that if a peril insured against—here, wind—is the proximate cause of his loss, he should recover under the policy, although other causes contributed to the loss.

■ We need not decide the proper construction to be given the word "including" in the present situation. O'Malley's argument, summarized above, sets up two hurdles he must clear in order to recover: (1) establishment by a preponderance of the evidence that windstorm was the proximate cause of the loss; and (2) proof that other contributing causes were not expressly excluded by the policy terms. O'Malley has failed to surmount the first hurdle. As we decided above, the district court's finding of no wind on March 29, 1980, is not clearly erroneous. If that finding stands, as we have decided it must, O'Malley cannot here prevail with an argument that depends upon establishing windstorm as a cause of his loss. Thus we affirm the judgment of the district court denying O'Malley recovery for the loss sustained on March 29, 1980.[1]

### IV.

O'Malley claims that the district court should not have denied him discovery of a file in the possession of U.S.F. & G. concerning a mudslide loss which occurred on April 22, 1979, in Natchez Under the Hill. The district court granted U.S.F. & G.'s motion to quash O'Malley's subpoena insofar as it addressed the April 22, 1979 file. O'Malley claims not only that the file would have led to the discovery of admissible evidence under Fed.R.Civ.P. 26(b), but that

the file itself would have been admissible as an admission of a party opponent.

■ As an initial matter, we do not feel that U.S.F. & G.'s payment for losses stemming from a mudslide on April 22, 1979, constitutes an admission that there was wind causing a second entirely separate mudslide on March 29, 1980. There is no evidence that the weather conditions were the same on the two dates. Thus, we will only address O'Malley's contention that the district court erred in preventing discovery of a file which would have led to the discovery of admissible evidence.

It is well established that broad discretion is given the trial court on discovery issues. It is unusual for an appellate court to find abuse of discretion in these matters. *Swanner v. United States*, 406 F.2d 716, 719 (5th Cir.1969). We have observed that the trial court's decision should be reversed only in an "unusual and exceptional case." *Brown v. Thompson*, 430 F.2d 1214, 1216 (5th Cir.1970).

■ The instant facts do not present an unusual and exceptional case constituting abuse of discretion. In fact, all evidence points to the conclusion that the district court's decision to deny discovery was supported by careful and thoughtful reasoning. The Magistrate considered O'Malley's discovery request on three separate occasions, each time denying discovery of the 1979 file. Upon the third request, the Magistrate inspected the contents of the entire questioned file, *in camera*, and determined that the file did not contain discoverable material. The district court agreed that the file was nondiscoverable. We see no abuse of discretion and affirm the order of the district court granting in part U.S.F. & G.'s motion to quash the subpoena.

### V.

O'Malley complains of the district court's failure to admit into evidence a report written by an engineer at Ware Lind Engineers

---

1. When the judgment of a district court is correct it may be affirmed for reasons not given by the court. *Bickford v. International Speedway Corp.*, 654 F.2d 1028, 1031 (5th Cir.1981).

on May 5, 1980, for an insurance company not a party in the present case, dealing with the mudslide at issue here. This report was prepared by Edwin E. Ware, who was not called to testify at the trial. O'Malley attempted to introduce the Ware report into evidence through Dennis, another engineer employed by Ware Lind Engineers who was presenting expert testimony on behalf of U.S.F. & G. Dennis testified that he did not participate in the preparation of the report: Ware wrote it. Dennis did not review or sign the report. Record Vol. 9 at 997–99. The district judge excluded the report from evidence.

█ We do not find that the district court abused its discretion in excluding the report and preventing cross-examination thereon. We conclude that the report was not admissible under any of the theories asserted by O'Malley: as data relied upon by an expert witness in formulating his opinion under Federal Rule of Evidence 705; as a business record under 803(6); or as a recorded recollection under 803(5). First, Dennis did not mention using the report as a basis in formulating his expert opinion. The report therefore cannot be admitted as data relied upon by an expert in forming his opinion. Nor did O'Malley succeed in establishing the prerequisites for admitting the record into evidence under the 803(6) "business record" exception to the hearsay rule. The "business record" exception requires a showing that the record was made by or from information transmitted by a person with personal knowledge of the matters contained therein; that the record was kept in the course of a regularly conducted business activity; that the record was accurate; and that it was the regular practice of the business to make such records. O'Malley failed to establish these requirements.[2] O'Malley's attempted foundation for admitting the report is therefore faulty and the report is inadmissible.

**2.** O'Malley claims that Dennis testified that the making of such records and business reports was a part of Ware Lind's regular business activity. Reply Brief at 19. The testimony cited, however, does not establish that Ware Lind reg-

█ Finally, Dennis could not qualify the report as a recorded recollection, admissible under 803(5). The witness laying the foundation for evidence admitted under 803(5) must show the report to be accurate. If the witness did not write the report, as here, he must testify that he examined it and found it to be accurate. *McCormick on Evidence* § 303, at 715–716 (2d ed. 1972). In the instant case, Dennis testified that he did not even remember reading the report before it was issued. Record Vol. 9 at 399. Hence the report is not admissible as a recorded recollection.

## VI.

█ O'Malley raises as his fifth ground of appeal the district court's bifurcation of the coverage and bad faith issues. By the explicit language of Fed.R.Civ.P. 42(b), the court has discretion to order separate trials of particular issues "in furtherance of convenience, or to avoid prejudice, or when separate trials will be conducive to expedition and economy." We will upset an order granting separate trials only upon a showing that the district court abused its discretion.

We find no such abuse in the present case. The district court, bound to apply the substantive law of Mississippi, properly declined to hear the punitive damages claim of bad faith after determining that there was no liability under the insurance policy. O'Malley has not presented, nor have we found, any Mississippi case allowing an insured to recover against an insurance company for alleged bad faith in handling a claim if the insured does not prevail on the issue of coverage. In fact, decisions involving Mississippi law indicate that the insured must establish not only that the insurer was liable on the policy, but that the insurer had no "arguable reasons" for denying coverage. *O'Connor v. Equitable Life Assurance Society of the United*

ularly wrote reports on the causes of mudslides. Instead, the testimony addressed Ware Lind's practice of making reports recommending the designs of foundations, not the type of report at issue here. Record Vol. 9 at 395.

*States,* 592 F.Supp. 595, 597 (N.D.Miss. 1984). Since a recovery on the bad faith claim would not have been possible unless O'Malley prevailed on his coverage claim, the district court acted correctly in bifurcating the issues to avoid prejudice and to expedite the trial.

O'Malley's claim that the bifurcation of issues prevented him from introducing evidence relevant to the coverage issue is without merit. O'Malley contends that his witnesses on the bad faith issue could have impeached U.S.F. & G. on the issue of coverage but were prevented from doing so. The court did not entirely exclude the testimony of these witnesses, however, but in fact agreed to hear their testimony on the issue of coverage:

> Now, if there are witnesses that you need to present, and if their testimony is admissible as some type of admission on behalf of the defendant, then the court will take those up, and certainly you may present that if it's relevant and material to the issue of whether or not your clients are owed the money under the policies, not as to whether or not the companies have engaged in some type of bad faith tort.

Record Vol. 5 at 27. An inter-office memo relating to both issues did get into evidence on the issue of coverage. Appellant's Brief at 39. Thus the bifurcation of issues did not prevent O'Malley from presenting his evidence on the coverage issue.

## VII.

Finally, O'Malley objects to the district court's denial of his request for a jury trial. By O'Malley's own admission, he failed to request a jury trial until, at the earliest, the status conference held before the U.S. Magistrate on March 15, 1984—twenty-six months after the case was removed to federal court and only two months before the original trial setting. Appellant's Brief at 41. The lateness of the request stemmed entirely from the inadvertence of O'Malley's counsel: Each of the two attorneys in this consolidated case thought that the other had requested a jury upon removal from

Mississippi state court, where such request was unnecessary, to federal court.

O'Malley argues that the tardiness of his request is not fatal. He notes that the Magistrate, operating under counsels' assumption that a jury request had been made, designated the case a jury case on the docket. Fed.R.Civ.P. 81(c) provides that if "state law applicable in the court from which the case is removed does not require the party to make express demands in order to claim trial by jury, they need not make demands after removal unless the court directs that they do so within a specified time ..." O'Malley contends that the Magistrate's designation of the case as a jury case constituted such a court directive, and that O'Malley complied with the directive by requesting a jury orally and in writing. In the alternative, O'Malley argues that the Magistrate's docket notation established his right to a jury trial. O'Malley thirdly claims that his verbal jury request fits within the auspices of Rule 39(b), which provides:

> (b) By the Court. Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

We are not persuaded by O'Malley's arguments. While we agree that Rule 81(c) is applicable here, we do not think that the Magistrate's docket notation rises to the level of a directive by the district court. Instead, as the district court observed, the Rule 81(c) directive can be found in the Local Rules of the United States District Court for the Southern District of Mississippi:

> *Rule 10: Jury Request ...* within ten days after filing of the answer in any civil case removed to this court (where such party in either case has a Seventh Amendment right thereto), either such party may request a jury in writing by endorsing such request conspicuously

upon the complaint or declaration or answer ... so that it shall be easily and quickly noticed.... A request for a jury otherwise presented will be addressed to the sound judicial discretion of the court. O'Malley failed to comply with this directive.

■ We also do not believe that the Magistrate's docket entry operated to establish O'Malley's right to a jury, estopping the court from later denying him a jury. We have previously held that similar factors cannot relieve a party from his waiver of the right to a trial by jury. *Bush v. Allstate Insurance Co.*, 425 F.2d 393, 396 (5th Cir.), *cert. denied*, 400 U.S. 833, 91 S.Ct. 64, 27 L.Ed.2d 64 (1970).

■ Finally, we do not think that it was an abuse of discretion for the district court to deny O'Malley a jury under Rule 39(b). O'Malley offers no justification for the delay in requesting a jury, admitting that the delay was entirely due to the inadvertence of counsel. Although the general rule governing belated jury requests under Rule 39(b) in this Circuit is that the trial court "should grant a jury trial in the absence of strong and compelling reasons to the contrary," *Swofford v. B. & W., Inc.*, 336 F.2d 406, 408 (5th Cir.1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965), if the failure to make a timely request is due to mere inadvertence on the movant's part, we generally will not reverse the trial court's refusal to grant a 39(b) motion. *See e.g., Fredieu v. Rowan Companies, Inc.*, 738 F.2d 651, 654 (5th Cir.1984) (finding no abuse of discretion in district court's denial of a jury request made over eight months after suit was filed and six weeks before the original trial date); *Rhodes v. Amarillo Hospital District*, 654 F.2d 1148, 1154 (5th Cir.1981) (finding no abuse of discretion in district court's denial of a jury request made thirty months after the original complaint and some three weeks before trial); *Bush v. Allstate Insurance Company*, 425 F.2d 393, 396 (5th Cir.), *cert. denied*, 400 U.S. 833, 91 S.Ct. 64, 27 L.Ed.2d 64 (1970) (finding no abuse of discretion in district court's

denial of a jury request made eighteen months after removal and some two months before trial). Here too we do not find that the district court abused its discretion in denying a jury request made twenty-six months after removal and two months before the original trial date when mere inadvertence caused O'Malley's failure to comply with the appropriate rules.

### VIII.

For the above reasons, the judgment of the district court is AFFIRMED.