884 P.2d 1134

BOARD OF DIRECTORS OF the ASSOCIATION OF APARTMENT OWNERS OF the DISCOVERY BAY CONDOMINIUM, Plaintiff–Appellant,

v.

UNITED PACIFIC INSURANCE COMPANY, a foreign corporation, Defendant–Appellee,

and

G.W. Murphy Construction Corporation, a Hawai'i corporation, AC Products, Inc., a foreign corporation, W E Painting, Inc., a Hawai'i corporation, John Does 1–10, Doe Corporations 1–10, Doe Partnerships 1–10, Doe Joint Ventures 1–10, and Doe "Non–Profit" Corporations 1–10, and Doe Governmental Entities 1–10, Defendants.

No. 15584.

Supreme Court of Hawai'i.

Dec. 2, 1994.

Colleen H. Sakurai and Randall K. Sing of Sakurai & Sing, Honolulu, for plaintiff-appellant.

James H. Lawhn of Oliver, Lee, Lawhn, Ogawa & Lau, Honolulu, for defendant-appellee United Pacific Ins. Co.

Michael R. Marsh and Catherine H. Lesica of Case & Lynch, Honolulu, for defendant-appellee G.W. Murphy Const. Co., Inc.

Before MOON, C.J., LEVINSON, NAKAYAMA and RAMIL, JJ., and SHIMABUKURO, Circuit Judge, in place of KLEIN, J., recused.

MOON, Chief Justice.

Plaintiff-appellant Board of Directors of the Association of Apartment Owners of the Discovery Bay Condominium (the AOAO) appeals from a circuit court order granting summary judgment in favor of defendant-appellee United Pacific Insurance Company (UPIC) and defendant G.W. Murphy Construction Company (Murphy). On appeal, the AOAO contends that genuine issues of material fact exist regarding the scope of damages covered by the maintenance bond, issued by UPIC to the AOAO, for the work performed by Murphy, thus precluding summary judgment. The AOAO urges this court to rule that a cause of action sounding in tort can arise against a surety for failure to properly investigate a claim that is wholly independent of its liability on the underlying bond. Because we decline to create or extend surety liability when liability on the underlying bond is absent, we reject the AOAO's contentions and affirm the trial court's grant of summary judgment in favor of UPIC.

## I. BACKGROUND

The AOAO contracted with Murphy, the general contractor, to perform repairs at the Discovery Bay Condominium, which included painting the building with "Wallflex," a water-resistant painting material. UPIC issued performance and maintenance bonds to the AOAO on the work to be performed by Murphy.

Under the terms of the performance bond, the AOAO was assured that, in the event Murphy failed to promptly and carefully perform the contract, UPIC, as surety, would be bound to honor Murphy's performance. The maintenance bond also guaranteed against all defects in workmanship and materials for a five-year period.

Murphy completed the work; however, a year later, the paint on the building exhibited a streaky, dirty appearance due to air particles and soot sticking to the Wallflex product. The elastic, waterproof nature of the paint made cleaning untenable, and the AOAO thereafter filed a claim with UPIC on the performance and maintenance bonds. UPIC conducted a preliminary investigation of the claim and denied payment of the AOAO's claims on the ground that the problems complained of were not covered by the bonds.

In 1988, the AOAO filed a complaint against UPIC, alleging breach of the performance and maintenance bonds, punitive damages for bad faith, and treble damages for unfair and deceptive trade practices. The action was subsequently stayed pending arbitration.

The parties to the arbitration included the AOAO, Murphy, UPIC, W E Painting, Inc., the painting subcontractor, Brewer Chemical Corporation, the supplier of Wallflex, and AC Products, Inc., the manufacturer of Wallflex.

The arbitrator's Decision and Award (the Decision) sets forth the issues submitted to arbitration for determination and those that were excluded, which are not disputed. The Decision states in pertinent part:

> [T]he surety, UPIC, and the [AOAO] agreed to submit the [AOAO's] breach of contract claims to this arbitration to the extent that such claims asserted that the surety was in breach of its obligations

under the Performance Bond and/or Maintenance Bond issued in connection with the Discovery Bay project.

The Decision at 4.

The arbitrator, in a comprehensive and well-reasoned decision found that

> [i]t was clear from the evidence that the quality of the workmanship, services or labor furnished by the General Contractor and Painting Subcontractor in applying the Wallflex product was of good quality. When the Discovery Bay Condominium was recoated with Wallflex, the work, in appearance, was excellent and even described by some as beautiful.

The Decision at 16. The arbitrator ultimately ruled that Murphy was not in breach of its contractual obligations to the AOAO and that UPIC, as surety, was not in breach of its obligations to the AOAO under the performance bond. Relative to the maintenance bond, the arbitrator stated:

> With regard to the Maintenance Bond, the issue is whether the scope of the Maintenance Bond is broader than the contractor's obligation to provide materials which are of good quality and free of faults and defects. If the specified materials are provided by the General Contractor consistent with the contract requirements, has the Surety guaranteed that the materials are also not deficient with regard to suitability?
>
> The Maintenance Bond guarantees the obligations of the General Contractor [and] NOT those of the architect. It is determined that the intention of the [AOAO], General Contractor and Surety was to procure or provide the additional assurance of the Surety's performance in the event the General Contractor breached its contractual obligations. The arbitrator finds insufficient evidence to establish any intention on the part of the [AOAO] or the Surety nor any evidence of actual bargaining for the Surety to guarantee the aesthetic performance of the specified coating material or the performance of the Architect.
>
> The arbitrator concludes that the "defect" in the aesthetic performance of the elastomeric coating is not the responsibili-

ty of the General Contractor.[1] Finding no evidence of poor workmanship in the execution of the work and determining that the Contractor did not provide defective (in the sense of faulty) materials, it is determined that UPIC is not in breach of its contractual obligations to the [AOAO] pursuant to the Maintenance Bond.

The Decision 34–35 (emphasis in original).

Following the issuance of the arbitrator's decision, the AOAO did not move to vacate, modify or correct the Decision, pursuant to Hawai'i Revised Statutes (HRS) chapter 658, Arbitration and Awards. Thereafter, pursuant to UPIC and Murphy's motion, the circuit court issued its order confirming the Decision.

Subsequent to the confirmation of the Decision, UPIC and Murphy sought summary judgment on the balance of the AOAO's claims premised on UPIC's alleged failure to investigate. The trial court granted the motion, noting that the AOAO had not raised any genuine issues of material fact as to why the AOAO would be able to obtain a judgment for bad faith or for unfair and deceptive acts when the underlying bond had not been breached and thus no liability attached to UPIC. Accordingly, the circuit court entered an order granting summary judgment in favor of UPIC and Murphy; the AOAO's timely appeal followed.

## II.  *STANDARD OF REVIEW*

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party clearly demonstrates that it is entitled to judgment as a matter of law. *Hawaiian Holiday Macadamia Nut Co. v. Industrial Indem. Co.*, 76 Hawai'i 166, 168, 872 P.2d 230, 232 (1994). This court applies a standard identical to that utilized by the trial court in its consideration of the motion. *Id.* The evidence is viewed in the light most favorable to the non-moving party. *Wong–Leong v. Hawaiian Independent Refinery, Inc.*, 76 Hawai'i 433, 439, 879 P.2d 538, 544 (1994).

## III.  *DISCUSSION*

■ On appeal, the AOAO contends that summary judgment was improper because genuine issues of material fact exist regarding the scope of the maintenance bond and UPIC's alleged improper investigation. The

1.  In his decision, the arbitrator reasoned:
    In this case the General Contractor has warranted that its work (labor and materials) will be of good quality and free from faults and defects and in conformance with the construction documents. "Defects" can be distinguished between products that are faulty or not as specified or the result of a "bad batch." This definition of defect can be distinguished from the situation where a material in "unsuitable" or inappropriate for the applied use.
    In his book *Sweet on Construction Industry Contracts*, Section 13.6, Professor Sweet distinguishes such faulty materials from defects due to the use of *unsuitable* or inappropriate material. If the contractor is ordered or required to use a specific brand of material, the contractor should not bear responsibility for a defect caused by *unsuitable* material. However, if the contractor agreed to meet performance specifications i.e. that a particular construction system installed will meet specified performance characteristics, then the contractor, having been given a choice over the system to be used, can be held responsible for failure of the selected system to meet performance specifications. If the contractor is given the free choice to use whichever brand the contractor selects, the contractor may again be held responsible for breach of warranty because the

contractor has been given the design choice and represents that it has the skill to make the proper choice and has not produced a successful outcome.
    In this case extensive effort and evidence was offered trying to establish that the Wallflex product to the Discovery Bay Condominium was a bad batch or not the Wallflex III generation of product. By a clear preponderance of the evidence, however, the Wallflex material applied at the Discovery Bay Condominium is determined to be Wallflex III, the intended and specified product called for in the construction documents.
    The arbitrator determines that the defect with regard to the Wallflex III material as applied at the Discovery Bay Condominium is of the category described by Professor Sweet as "unsuitable." In that context, it is a design defect, not the responsibility of the General Contractor or the Painting Subcontractor. Whether the Supplier or the Manufacturer are to be responsible for the unsuitability of the product or whether the Association's Architect should be responsible for the failure of Wallflex to perform acceptably as an aesthetically attractive exterior coating are issues not submitted to this arbitration.
    The Decision at 26–28 (emphasis in original).

AOAO argues that, although the performance bond was limited to the contractor's duties, the maintenance bond extended to all work performed under the contract. Thus, the AOAO asserts that UPIC's obligation under the maintenance bond incorporated the work done by the architect as well as the manufacturer and supplier of the Wallflex product.

Because the AOAO is bound by the arbitrator's decision, we find this argument to be without merit. The arbitrator specifically ruled that the scope of the maintenance bond was limited to the liability of the general contractor. The arbitrator was equally explicit in delineating the liability of UPIC under the bond so as to exclude liability for the aesthetic defects claimed by the AOAO.

■ The AOAO also argues that the circuit court erred in granting summary judgment because UPIC's principal duty was to the AOAO, as the obligee, and not to Murphy, the principal. The AOAO maintains that, because UPIC did not properly investigate the AOAO's claim on the maintenance bond, it committed a tort; therefore, the AOAO is entitled to relief separate from and notwithstanding the arbitrator's denial of relief on the bond itself. We disagree.

It is well established that an insurer has no duty to investigate where the claim is excluded by the clear and unambiguous language in the insurance policy. *Security Ins. Co. of Hartford v. Wilson,* 800 F.2d 232, 235 (10th Cir.1986) (citation omitted). In *O'Malley v. United States Fidelity and Guar. Co.,* 602 F.Supp. 56 (S.D.Miss.), *aff'd,* 776 F.2d 494 (5th Cir.1985), the court held that an insured cannot recover for the tort of a bad faith failure to investigate and pay losses incurred by the insured where the insured did not prevail on its claim that the insurers were liable on the underlying policies. *Id.* at 59.

The court in *O'Malley* refused to allow a separate action where the property damage losses incurred by the plaintiffs were already deemed to have been excluded from their insurance policy in a bifurcated trial. *Id.* at 59–60; *see also Schoonover v. West American Ins. Co.,* 665 F.Supp. 511, 516 (S.D.Miss. 1987) ("Although styled a tort, an action for bad-faith breach of contract is created by contract and requires proof of a breach of contract."); *Szumigala v. Nationwide Mutual Ins. Co.,* 853 F.2d 274, 280 (5th Cir.1988) (where insurer has reasonably arguable basis for denying a claim, its conduct cannot constitute bad faith); *Guy v. Commonwealth Life Ins. Co.,* 894 F.2d 1407, 1411 (5th Cir. 1990) (insurer will not be subject to punitive damages if it had legitimate or arguable reason for failing to pay claim); *R.I. Hosp. Trust Nat. Bank v. Ohio Cas. Ins. Co.,* 789 F.2d 74, 81 (1st Cir.1986) (when surety's responsibility is to secure an obligation of the principal, extinction of obligation logically should extinguish surety's responsibility no matter who seeks to assert the claim). We adopt the law expressed in these cases as consistent with our interpretation of a surety's liability to its obligee on all bonds, including maintenance bonds.

The AOAO argues that surety contracts differ from insurance contracts because, unlike an insurer, the surety owes its duty directly to the obligee and not the insured; therefore, a tort claim, based on inadequate investigation, can be asserted against a surety even without liability on the underlying bond. The AOAO's assertion is without merit. The AOAO cites to no authority, and we have found none, that recognizes a cause of action against an insurer or surety for failure to investigate where there is determined to be no contractual obligation under the policy or bond.

■ Clearly, the surety owes a duty of good faith and fair dealing to *both* the principal and the obligee on the bond. *Dodge v. Fidelity & Deposit Co. of Md.,* 161 Ariz. 344, 346–47, 778 P.2d 1240, 1241–42 (1989). If the surety pays too quickly to the obligee, it may invite liability claims from the principal. Conversely, if it refuses to pay anything pending an arbitration or judicial proceeding to determine its liability on the bond, the surety may incur liability to the obligee for failing to act promptly on a valid claim. *See generally* Hart, *Bad Faith Litigation Against Sureties,* 24 Tort & Insurance Law Journal 18, 19 (1988). This dual responsibility explains the surety's careful examination

**362**

of the nature of all presented claims before acting upon them. Although the surety is not excused from intentionally delaying the processing of valid claims, it is not unreasonable for the surety to determine whether it is legally bound to pay such claims before it expends the time and expense to investigate their factual validity.

### IV. *CONCLUSION*

Because UPIC is not liable on the maintenance bond, the AOAO has no cause of action against it; thus, UPIC and Murphy are entitled to summary judgment as a matter of law. Consequently, we need not address the issue whether the AOAO raised a genuine issue of material fact regarding the efficacy of the investigation conducted by UPIC, or whether Hawai'i will recognize a tort action against a surety for its bad faith failure to investigate a claim.

Accordingly, we affirm the trial court's grant of summary judgment in favor of UPIC and Murphy.