128 P.3d 850

**Angie M. ENOKA, Plaintiff–
Appellant/Cross–
Appellee,**

**v.**

**AIG HAWAII INSURANCE COMPANY,
INC., a Hawai'i corporation, Defendant–Appellee/Cross–Appellant,**

**and**

**John Does 1–10, Doe Partnerships,
Corporations, And/Or Other
Entities 1–10, Defendants.**

No. 25291.

Supreme Court of Hawai'i.

Feb. 23, 2006.

As Corrected Feb. 28, 2006.

538

Melvin Y. Agena, on the briefs, Honolulu, for plaintiff-appellant/cross-appellee Angie M. Enoka.

Jonathan H. Steiner and R. John Seibert (of McCorriston Miller Mukai MacKinnon), on the briefs, Honolulu, for defendant-appellee/cross-appellant AIG Hawai'i Ins. Co.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by MOON, C.J.

The instant appeal and cross-appeal arise out of an apparent one-car accident in which plaintiff-appellant/cross-appellee Angie M. Enoka either fell from, or was thrown out of, the bed of a pick-up truck owned by Kenneth J. Carvalho and being operated at the time by Elizabeth A. Ubay. Subsequent to the accident, Enoka filed a claim for no-fault benefits with several insurers, including defendant-appellee/cross-appellant AIG Hawai'i Insurance Company (AIG). AIG had issued

a personal automobile policy to Enoka's parents, with whom Enoka resided in the same household. However, AIG denied the claim on the basis that the applicable statute of limitations had run on Enoka's claim for no-fault benefits. Enoka thereafter filed the instant lawsuit, asserting, *inter alia:* (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) intentional infliction of emotional distress (IIED).

Enoka appeals from the Circuit Court of the First Circuit's [1] August 19, 2002 final judgment entered in favor of AIG. On appeal, Enoka argues that the trial court erred in granting AIG's motion for summary judgment on all of Enoka's claims. AIG cross-appeals, challenging the trial court's denial of its motion for attorneys' fees and costs. In its cross-appeal, AIG asserts that the trial court erred by taking into consideration equitable grounds unrelated to the reasonableness of the amount of the attorneys' fees sought.

For the reasons discussed below, we affirm the trial court's order granting final judgment in favor of AIG and the trial court's order denying AIG's motion for attorneys' fees and costs. Because we agree with Enoka that the trial court may decide the issue of Enoka's request for attorneys' fees and costs incurred with respect to the instant appeals, we remand this case to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

On April 19, 1997, Enoka, who was sitting in the bed of a pick-up truck owned by Carvalho and driven by Ubay, fell or was thrown from the vehicle while it was in motion and sustained bodily injuries. At the time of the accident, Enoka lived with her parents and brother. Enoka's parents owned three automobiles, all of which were insured under a single policy with AIG (the AIG policy). Both Enoka's and her brother's automobiles were insured under separate policies with Government Employees Insur-

---

1. The Honorable Victoria S. Marks presided over the underlying proceedings.

ance Company (GEICO). Each GEICO policy provided $30,000 in no-fault benefits.

The pick-up truck was insured by State Farm Insurance Company (State Farm) through a personal automobile policy issued to Carvalho. Ubay, the operator of the pick-up truck, was the owner of an automobile that was not involved in the subject accident, which was insured by Allstate Insurance Company (Allstate). Following the accident, Enoka submitted no-fault and bodily injury liability claims to State Farm and Allstate. Enoka also filed claims for underinsured motorist (UIM) coverage under her and her brother's policies with GEICO.

Enoka allegedly received insurance benefits from several of these carriers. By June 25, 1997, Enoka had exhausted no-fault benefits from State Farm. In September 1998, Enoka secured a tort settlement for general damages paid by State Farm and Allstate. In March 2000, Enoka reached a settlement with GEICO for UIM benefits.

On June 12, 2000, more than three years after the accident, Enoka filed a claim for no-fault benefits under the AIG policy. On July 5, 2000, AIG sent Enoka a "Denial of Claim" form (denial form), denying Enoka's claim for no-fault benefits. The denial form explained:

> The two-year Statute of Limitation on No–Fault benefits has run. Pursuant to [Hawai'i Revised Statutes (]HRS[) § ] 431:10C–315 "Statute of Limitations," you may not make a claim for No–Fault benefits beyond two-years after the motor vehicle accident, from the last payment of No–Fault benefits or [two years] from the claimants [*sic* ] eighteenth birthday. The last medical payment was on 6–25–97 therefore, the statute ran on 6/26/98.[2]

**2.** The denial form, as originally prepared, incorrectly states that the statute of limitations ran on "*6/26/98*." (Emphasis added.) Although not explained, the denial form in the record shows the "8" in "98" as stricken and replaced with a handwritten "9."

**3.** AIG originally filed its motion for summary judgment on October 4, 2001. Following receipt

### B. *Procedural History*

#### 1. Complaint and Answer

On December 13, 2000, Enoka filed a complaint against AIG, asserting claims for, *inter alia*, breach of contract, breach of the implied covenant of good faith and fair dealing, and IIED. Enoka claimed that AIG was contractually obligated to provide her with the no-fault policy limits of her parents' policy, totaling $100,000 less any no-fault payments paid by other insurers.

AIG failed to timely answer Enoka's complaint. Consequently, Enoka obtained an entry of default against AIG on February 27, 2001. On April 18, 2001, AIG answered Enoka's complaint. Enoka filed a motion to strike AIG's untimely answer on May 9, 2001. AIG moved to set aside the entry of default on May 16, 2001. On May 21, 2001, the parties stipulated to set aside the entry of default against AIG.

#### 2. AIG's Motion for Summary Judgment

On March 4, 2002, AIG moved for summary judgment on all counts in Enoka's complaint.[3] Therein, AIG argued, *inter alia*, that its motion for summary judgment should be granted inasmuch as: (1) Enoka's claim for no-fault benefits was barred by Hawaii's applicable statute of limitations, as cited in its denial form; (2) Enoka failed to timely notify AIG of her no-fault claim for benefits; and (3) certain exclusions in the AIG policy barred Enoka's claim for no-fault benefits and that, therefore, Enoka was not contractually entitled to no-fault coverage under the AIG policy.

On March 22, 2002, Enoka filed her memorandum in opposition to AIG's motion for summary judgment. Therein, Enoka countered AIG's arguments, contending, *inter alia*, that: (1) AIG acted in bad faith by

of Enoka's memorandum in opposition, filed on December 28, 2001, AIG withdrew its original motion on January 2, 2002, apparently having realized it had attached an incorrect version of the policy issued to Enoka's parents to the original motion. Upon re-filing its motion for summary judgment on March 4, 2002, the correct version of the policy was attached.

proffering only one reason, *i.e.*, the statute of limitations, when it denied Enoka's claim for no-fault benefits in its denial form; (2) by acting in bad faith, AIG is estopped from asserting other reasons based on the language of the AIG policy to bar Enoka's claims in the instant action; and (3) even if AIG is not guilty of bad faith, it nevertheless waived its right to rely on its policy exclusions or is estopped from doing so because it had not relied on those policy exclusions when it originally denied Enoka's claim for no-fault benefits on July 5, 2000 and when it filed its answer to Enoka's complaint.

On May 16, 2002, the trial court granted AIG's motion for summary judgment on all counts alleged in Enoka's complaint. The written order entered by the trial court stated:

> The Court finds that Exclusion A of Subpart E of the subject motor vehicle insurance policy [the AIG policy [4]] applies to the undisputed facts surrounding Plaintiff's [Enoka's] claim for no-fault benefits. As a result, the Court concludes that Defendant [AIG] had no duty to pay the claimed benefits with the result that each of [Enoka's] causes of action fails, including that based on an alleged violation of the implied covenant of good faith and fair dealing, otherwise known as "bad faith." The doctrines of waiver and estoppel do not apply where, as here, no coverage existed in the first place by virtue of the operation of Exclusion A.

### 3. AIG's Motion for Attorneys' Fees and Costs

Having prevailed on its motion for summary judgment, AIG moved for an award of attorneys' fees and costs pursuant to HRS §§ 607–14 and 607–9, quoted *infra*, on May 29, 2002. AIG sought attorneys' fees in the amount of $20,621.60 and costs in the amount of $310.39. On July 15, 2002, the trial court

held a hearing on AIG's motion. At the commencement of the hearing, the trial court advised the parties that it was inclined to partially grant AIG's motion and award $13,106.11 as reasonable attorneys' fees, as well as $250.60 in costs. During the hearing, Enoka's counsel argued that no fees should be awarded, urging that "the hand of equity should step in." Specifically, Enoka's counsel re-argued his earlier rejected waiver and estoppel arguments, contending that it would be unfair to award AIG any attorneys' fees and costs because the ground relied upon by the trial court in granting AIG's motion for summary judgment (*i.e.*, Exclusion A) was not the one originally cited by AIG when it issued its denial form (*i.e.*, statute of limitations). The trial court agreed and, at the conclusion of the hearing, ruled that it would not award any attorneys' fees and costs to AIG. The trial court's written denial was entered on July 30, 2002.

On August 19, 2002, final judgment was entered in favor of AIG. Enoka timely appealed on August 28, 2002, and AIG cross-appealed on September 11, 2002.

## II. STANDARDS OF REVIEW

### A. Motion for Summary Judgment

▇▇▇▇ This court reviews a circuit court's grant or denial of summary judgment *de novo. Price v. AIG Hawai'i Ins. Co.*, 107 Hawai'i 106, 110, 111 P.3d 1, 5, *reconsideration denied*, 107 Hawai'i 106, 111 P.3d 1 (2005) (citation omitted). The standard for granting a motion for summary judgment is well settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is

---

**4.** Part E of the AIG policy, entitled "No–Fault Coverage," provides in relevant part:

> EXCLUSIONS
> We do not provide No–Fault Coverage for **bodily injury:**
> A. To any **family member** who is a named insured under another no-fault policy, except while **occupying your covered auto.**

> . . . .
> E. To you or any **family member** while **occupying** or while a **pedestrian** caused by an insured motor vehicle other than **your covered auto.**
> (Bold emphases in original.)

material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citation omitted) (brackets in original).

B. *Statutory Interpretation*

■■■ Statutory interpretation is reviewed *de novo* by this court. *Blair v. Ing,* 95 Hawai'i 247, 253, 21 P.3d 452, 458 (2001) (citations omitted). "When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." *Taylor–Rice v. State,* 105 Hawai'i 104, 108, 94 P.3d 659, 663 (2004) (citations omitted). Moreover, "[i]t is a cardinal rule of statutory interpretation that, where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning. Instead, our sole duty is to give effect to the statute's plain and obvious meaning." *T–Mobile USA, Inc. v. County of Hawai'i Planning Comm'n,* 106 Hawai'i 343, 352–53, 104 P.3d 930, 939–40 (2005) (citation omitted).

C. *Motion for Attorneys' Fees and Costs*

■■■ This court reviews the trial court's grant or denial of attorneys' fees and costs under the abuse of discretion standard. *Price,* 107 Hawai'i at 110, 111 P.3d at 5 (citations omitted).

The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. Stated differently, an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*Id.* (citations omitted).

## III. *DISCUSSION*

On appeal, Enoka argues that: (1) the AIG policy provides coverage for her claim for no-fault benefits; (2) AIG acted in bad faith when it wrongfully denied Enoka's claim for no-fault benefits; (3) AIG waived or is estopped from raising policy exclusions as defenses to Enoka's breach of contract and breach of the implied covenant of good faith and fair dealing claims; and (4) AIG intentionally inflicted emotional distress on her. However, we first address AIG's contention that the applicable statute of limitations bars Enoka's claim for no-fault benefits.

A. *Statute of Limitations*

■■■ At the time of Enoka's April 19, 1997 accident, the applicable statute of limitations was codified at HRS § 431:10C–315(a) (1993), which provided:

(a) No suit shall be brought on any contract providing no-fault benefits or any contract providing optional additional coverage more than, *the later of:*

(1) *Two years from the date of the motor vehicle accident upon which the claim is based;*

(2) *Two years after the last payment of no-fault or* **optional additional benefits;**

(3) Two years after the entry of a final order in arbitration; or

(4) Two years after the entry of a final judgment in, or dismissal with prejudice of, a tort action arising out of a motor vehicle accident, where a cause of action for insurer bad faith arises out of the tort action.

(Emphases added.) Enoka filed her claim for no-fault benefits with AIG on June 12, 2000, more than three years after the date of the subject motor vehicle accident. Relying on the Intermediate Court of Appeals' (ICA) decision in *Higa v. Lino,* 82 Hawai'i 535, 537, 923 P.2d 952, 954 (App.1996) (stating that, for purposes of HRS § 431:10C–315(b)(2), uninsured motorist [ (UM) ] benefits constitute "optional additional benefits"), Enoka contends that the two-year statute of limitations commenced in March 2000, when she re-

ceived her last UIM benefits from GEICO.[5] AIG, on the other hand, argued that subsection (a)(2) "must be read to measure the limitations period from the last date that the *defendant* insurer paid a no-fault or optional additional benefit, not the last date that any insurer made such a payment," (emphasis in original), and *Higa* did not definitively address the issue at bar.

In *Higa*, Miles Higa (the plaintiff) was a passenger in a car operated by Fred Lino. *Id.* at 536, 923 P.2d at 953. While traveling down a highway, Lino's car collided into the rear of an abandoned car, resulting in injuries to the plaintiff. *Id.* Lino thereafter removed the plaintiff from his car and placed the plaintiff on the shoulder of the highway to await an ambulance. *Id.* However, another car, operated by Jimmy Bolosan, somehow caused a second accident that further injured the plaintiff. *Id.* The multiple car accident occurred on September 8, 1985. *Id.*

The plaintiff had received no-fault benefits under Lino's automobile insurance policy, and these no-fault benefits were exhausted on December 10, 1987. *Id.* The plaintiff also received no-fault benefits from Bolosan's automobile insurance policy, and, according to the plaintiff, he was still receiving these benefits as of February 26, 1991. *Id.* In the meantime, on October 11, 1990, Allstate Insurance Company (Allstate) tendered a $75,000 check to the plaintiff as "final settlement of any and all claims for bodily injury under [UM] coverage" arising from the accident.[6] *Id.* at 536–37, 923 P.2d at 953–54.

On February 2, 1990, the plaintiff filed a complaint, naming Lino and Bolosan as defendants. *Id.* at 537, 923 P.2d at 954. However, on January 25, 1991, the plaintiff amended his complaint, by removing Bolosan as a co-defendant. Thereafter, Lino moved for summary judgment, arguing that the

plaintiff's claim was barred by the statute of limitations under Hawaii's no-fault laws.[7] *Id.* The applicable statute of limitations provided that:

(b) No suit arising out of a motor vehicle accident shall be brought in tort more than:

(1) Two years after the date of the motor vehicle accident upon which the claim is based; or

(2) *Two years after the date of the last payment of* no-fault or *optional additional benefits;*

(3) Two years after the date of the last payment of workers' compensation or public assistance benefits arising from the motor vehicle accident; whichever is the last to occur.

*Id.* (quoting HRS § 294–36(b) (1985)) (emphases added). The trial court granted Lino's motion for summary judgment, and the plaintiff appealed. *Id.*

The dispositive issue on appeal was whether UM benefits constituted "optional additional benefits." Disagreeing with the trial court, the ICA concluded that "optional additional benefits" includes UM benefits. Accordingly, the ICA held that, because the plaintiff "received a payment of [UM] benefits, or optional additional benefits, on October 11, 1990, and because HRS § 294–36(b) only bars tort actions brought more than two years after the date of the last payment of optional additional benefits," the plaintiff's January 25, 1991 first amended complaint was timely filed. *Id.* at 539, 923 P.2d at 956.

However, the plaintiff also argued that his first amended complaint was timely if measured from Bolosan's last no-fault payment. *Id.* at 538 n. 6, 923 P.2d at 955 n. 6. The plaintiff contended that "the timeliness of the amended complaint can be measured from

---

**5.** In *Honbo v. Hawaiian Ins. & Guar. Co.*, 86 Hawai'i 373, 376, 949 P.2d 213, 216 (App.1997), the ICA extended the reasoning and holding of *Higa* to conclude that, for the purpose of HRS § 294–36(a) (predecessor to HRS § 431:10C–315(a)), UIM benefits constitute "optional additional benefits."

**6.** Allstate's insureds were identified as "Masao and M.P. Higa." However, the ICA opinion notes that the record is silent as to the relationship

between Allstate's insureds and Miles Higa, the plaintiff. *Id.* at 537 n. 2, 923 P.2d at 954 n. 2.

**7.** At the time of the September 8, 1985 accident, the applicable statute of limitations was found in HRS § 294–36(b) (1985), which was recodified to HRS § 431:10C–315(b) in 1987. Although recodified in 1987, the language of section 294–36(b) has remained unchanged. *Higa*, 82 Hawai'i at 537 & n. 5, 923 P.2d at 954 & n. 5.

Bolosan's no-fault payment if the injuries he received when Bolosan's car collided with [Lino's] car are attributed to [Lino's] negligence." *Id.* The ICA first noted that it need not consider this argument in light of its holding, stated *infra.* *Id.* The ICA then noted that,

> if we did consider this argument, we believe that the no-fault benefits referred to in HRS § 294–36(b) [HRS § 431:10C–315(b)] are limited to no-fault benefits arising only from the Lino accident, and not from the later Bolosan accident. Therefore, the timeliness of [the plaintiff's] amended complaint should not be measured from Bolosan's last no-fault payment.

*Id.*

The ICA's decision in *Higa,* however, is not dispositive of the issue in the present case. Although the plaintiff in *Higa* ultimately brought suit only against the first driver, Lino, *Higa* involved two separate motor vehicle accidents, the Lino accident and the Bolosan accident, which may have led the ICA to conclude in dicta that the timeliness of the plaintiff's amended complaint should not be measured from Bolosan's last no-fault payment.

Nevertheless, a plain reading of HRS § 431:10C–315(a)(1) and (2) dictates that a plaintiff may bring suit on "any contract providing no-fault benefits," provided that the suit is brought no later than two years from either (1) "the date of the motor vehicle upon which the claim is based" or (2) "the last payment of no-fault or optional additional benefits." Significantly, section 431:10C–315(a)(2) does *not* condition the last payment of no-fault or optional additional benefits to be from a defendant insurer. Therefore, based on the plain language of section 431:10C–315(a)(2), we hold that Enoka's claim for no-fault benefits is not barred, inasmuch as the last payment of no-fault or optional additional benefits was made not more than two years before Enoka filed her

complaint against AIG. In other words, because the UIM benefits from GEICO was paid sometime in March 2000 and Enoka's complaint was filed on December 13, 2000, the complaint was timely.

## B. *Enoka's Contention that the AIG Policy Provides Coverage for her Claim for No-Fault Benefits*

Enoka contends that the trial court erred in ruling that Exclusion A, *see supra* note 4, of the AIG policy bars Enoka's breach of contract claim. Enoka argues— allegedly for the first time on appeal—that the AIG policy "is reasonably subject to differing interpretations" and is, therefore, ambiguous.

In general, "failure to raise or properly reserve issues at the trial level would be deemed waived." *Coll v. McCarthy,* 72 Haw. 20, 26, 804 P.2d 881, 886 (1991) (citations omitted). AIG maintains that Enoka never raised her "ambiguity argument" at the trial level. In opposition to AIG's motion, Enoka argued that "Exclusion A was inapplicable because it was limited to 'No-Fault Coverage for bodily injury' and [Enoka] did not make a claim for bodily injury, but rather one for Personal Injury Protection (PIP) benefits." [8] In response, Enoka alleges that she adequately raised her ambiguity argument at the trial level, which was that "the two exclusions on which AIG relied in support of its motion for summary judgment applied only to the statutory minimum no-fault benefits, and not to optional additional no-fault benefits."

On appeal, Enoka contends that

> [t]he [AIG] policy's failure to incorporate the "Exclusions" subpart of Part E, while it expressly incorporates the subpart "Insuring Agreement (Coverages and Benefits Provided),"[9] coupled with its failure to mention Exclusion A or any other Exclusion of Part E, while it expressly mentions

---

8. Although confusing, it appears that Enoka is indicating that she did not make a tort claim that would trigger the bodily injury liability coverage, but rather that her claim was for medical and/or wage loss benefits, currently referred to as Personal Injury Protection or PIP benefits.

9. The subpart "Insuring Agreement (Coverages and Benefits Provided)" is found in Part E—No-Fault Coverage.

Exclusion E of Part E, [in the section discussing Option 1 [10]] renders the policy ambiguous.

. . . .

Option 1 of the [AIG] policy is reasonably subject to differing interpretations regarding the applicability of Exclusion A of Part E to optional additional no-fault coverage.

Enoka appears to argue that, because Exclusion A is not mentioned in the section discussing Option 1, *i.e.*, additional no-fault coverage, Exclusion A does not bar her claim for no-fault benefits and, thus, does not bar her breach of contract claim. We believe Enoka's argument on appeal is substantially similar to the argument made at the trial level, *i.e.*, that Exclusion A does not bar her claim for no-fault benefits. Accordingly, we hold that Enoka's argument with respect to the applicability of Exclusion A was sufficiently preserved for this appeal and, thus, is not waived. *See Lau v. Valu–Bilt Homes, Ltd.*, 59 Haw. 283, 288, 582 P.2d 195, 199 (1978) (noting that, where the issue was before the trial court from the inception of the litigation and where it is not a case where the trial court did not have any opportunity to pass on the issue, the issue is preserved for appeal). Consequently, we next address whether Exclusion A bars Enoka's claim for no-fault benefits.

 Ordinarily, insurers have the same rights as individuals to limit their liability and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy. As such, insurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended. Moreover, every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy. Nevertheless, adherence to the plain language and literal meaning of the insurance contract provisions is not without limitation. We have acknowledged that[,] because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer. Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson.

*Dairy Rd. Partners v. Island Ins. Co.*, 92 Hawai'i 398, 411–12, 992 P.2d 93, 106–07 (2000) (internal quotation marks, brackets, and citations omitted).

As previously noted, Part E, entitled "No-Fault Coverage," of the AIG policy, describes circumstances under which AIG will *not* provide no-fault coverage. Exclusion A provides:

We do <u>not</u> provide No–Fault Coverage for **bodily injury:**

A. To any **family member** <u>who is a named insured under another no-fault policy</u>, except while **occupying your covered auto.**

(Bold emphases in original.) (Underlined emphasis added.) Here, it is undisputed that Enoka was a "named insured under another no-fault policy," namely, her own personal

10. In the section entitled "OPTION 1—ADDITIONAL NO–FAULT COVERAGE," the AIG policy provides in relevant part:

We will provide the insurance described under this option only if **OPTION 1** is indicated on the Declarations and the appropriate premium is paid.
All provisions and definitions applicable to coverages and benefits provided under Part E of this policy apply unless modified by this coverage.
We will pay Additional No–Fault Coverage benefits as stated in the Declarations to or for a **covered person** who sustains **bodily injury** resulting from an **auto accident.**
1. The Additional No–Fault Coverage **work loss** benefits do not apply to any **covered person** except you or a **family member.**
2. We will not pay Additional No–Fault Coverage to any person sustaining bodily injury caused by an auto owned by that person and not insured for Additional No–Fault Coverage.
3. Exclusion E. under Part E does not apply to Additional No–Fault Coverage.
(Bold emphases in original.)

automobile policy with GEICO, which provided $30,000 in no-fault benefits. Further, it is undisputed that Enoka is a "family member"[11] under the AIG policy and that she was not occupying any of her parents' "covered auto[s]"[12] at the time of the accident. Thus, according to the plain language of Exclusion A, AIG is not obligated to provide no-fault benefits to Enoka under the circumstances of this case.

However, Enoka, as previously stated, apparently believes that, inasmuch as Exclusion A is not included or even mentioned in Option 1, she is entitled to additional no-fault coverage benefits. As previously noted, Option 1 provides in relevant part:

> We will provide the insurance described under this option only if **OPTION 1** is indicated on the Declarations and the appropriate premium is paid.
>
> All provisions and definitions applicable to coverages and benefits provided under Part E of this policy apply unless modified by this coverage.
>
> We will pay Additional No–Fault Coverage benefits as stated in the Declarations to or for a **covered person** who sustains **bodily injury** resulting from an **auto accident.**

(Bold emphases in original.) (Underlined emphases added.) Option 1 then sets forth the following three coverage modifications:

1. The Additional No–Fault Coverage **work loss** benefits do not apply to any **covered person** except you or a **family member.**

2. We will not pay Additional No–Fault Coverage to any person sustaining bodily injury caused by an auto owned by that person and not insured for Additional No–Fault Coverage.

3. Exclusion E. under Part E does not apply to Additional No–Fault Coverage.

(Bold emphases in original.)

In this case, Option 1 is listed on the Declarations page of the policy, and AIG does not dispute that the appropriate premium was paid by Enoka's parents. Option 1 clearly provides that "all provisions and definitions applicable to coverages and benefits provided under Part E ... *apply unless modified* by this coverage." (Emphasis added.) Exclusion A is a "provision[ ] ... applicable to coverages and benefits provided under Part E." Although Exclusion A precludes no-fault coverage for bodily injury to any family member who is a named insured under another no-fault policy, it does not preclude such coverage to such family member when occupying a covered auto. Thus, the additional coverage provision in Option 1 applies, unless it has been modified by the specific provisions in Option 1. As stated above, Option 1 indicates three coverage modifications. Significantly, Exclusion A is *not* modified, whereas Exclusion E *is* modified in that Option 1 clearly states that additional no-fault coverage does not apply to the circumstances described in Exclusion E. Clearly, the absence of any reference to Exclusion A indicates that additional no-fault benefits are available under the circumstances described in Exclusion A. However, inasmuch as AIG is not obligated to provide Enoka no-fault benefits pursuant to the plain language of Exclusion A, it follows that AIG is likewise not obligated to provide Enoka additional no-fault coverage under Option 1. Accordingly, we hold that the trial court did not err in ruling that Exclusion A of the AIG policy bars Enoka's breach of contract claim.

11. The AIG policy defines "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household." In turn, "you" refers to the named insured shown in the Declarations and the named insured's spouse, if the spouse lives in the same household as the named insured. In this case, the Declarations show that Enoka's parents, William and Monica Enoka, are the named insureds on the AIG policy. Thus, inasmuch as Enoka is the daughter of William and Monica Enoka, and she resides in the same household as her parents, Enoka is a "family member" and a "covered person" under the AIG policy. Neither party contests the foregoing construction.

12. "Covered auto" is defined in the AIG policy in pertinent part as "[a]ny vehicle shown in the Declarations." Here, the pick-up truck owned by Carvalho and driven by Ubay is not shown in the Declarations and, thus, is not a "covered auto."

#### C. *AIG's Alleged Breach of the Implied Covenant of Good Faith and Fair Dealing, i.e., Bad Faith*

##### 1. Whether Enoka May Assert a Claim for AIG's Alleged Bad Faith Where There Is No Coverage Liability on the Underlying Policy

Enoka next contends that the trial court erred in concluding that, inasmuch as AIG had no duty to pay no-fault benefits to Enoka pursuant to Exclusion A, Enoka is precluded from bringing a claim against AIG for its alleged breach of the implied covenant of good faith and fair dealing, *i.e.*, "bad faith." Enoka argues that AIG's "duty to act in good faith and deal fairly with Enoka is separate and distinct from its contractual duties that arise under the [AIG] policy." In other words, Enoka maintains that, "even . assuming *arguendo* that there is no coverage for Enoka's claim for benefits under the [AIG] policy, AIG's conduct ... is totally independent of any coverage issue."

In response, AIG contends that Enoka "overlooks the fact that the applicability of Exclusion A to her claim means no insurance contract existed in the first instance obligating AIG to pay no-fault benefits." In the absence of a contractual duty to pay no-fault benefits, AIG argues there is no implied covenant of good faith and fair dealing to breach and, thus, no action for bad faith may lie.

In *Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Hawai'i 120, 920 P.2d 334 (1996), this court held that

> there is a legal duty, implied in a first- and third-party insurance contract,[13] that the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent tort cause of action. The breach of the express covenant to pay claims, however, is not the *sine qua non* for an action for breach of the implied covenant of good faith and fair dealing. The implied covenant is breached, whether the carrier pays the claim or not, when its conduct damages the very protection or security which the insured sought to gain by buying insurance.

*Id.* at 132, 920 P.2d at 346 (internal quotation marks and citations omitted). Moreover,

> the tort of bad faith is not a tortious breach of contract, but rather *a separate and distinct wrong which results from the breach of a duty imposed as a consequence of the relationship established by contract.* Therefore, the tort of bad faith allows an insured to recover even if the insurer performs the express covenant to pay claims.

*Id.* at 131, 920 P.2d at 345 (internal quotation marks and citation omitted) (emphases added). This court, however, did not directly discuss in *Best Place* whether the tort of bad faith is recognized when the insurer has *no* contractual duty to pay benefits to the insured based on the clear and unambiguous language of the insurance policy, specifically, as in the instant case, an exclusion in the insurance policy.

In *Int'l Bhd. of Elec. Workers Local 1357 [(Local 1357)] v. Am. Int'l Adjustment Co.*, 955 F.Supp. 1218 (D.Haw.1997), *aff'd mem.*, 142 F.3d 443 (9th Cir.1998), an insured labor union and two employees [hereinafter, collectively, the insured] brought a state court action against its commercial general liability

---

13. "A 'first-party claim' refers to an insurance agreement where the insurer agrees to pay claims submitted to it by the insured for losses suffered by the insured." *Best Place*, 82 Hawai'i at 124 n. 4, 920 P.2d at 338 n. 4. In general,

> first-party bad faith claims arise out of the insurer's bad faith handling of a first-party claim.... Thus, first-party insurer bad faith claims typically arise out of an insurer's unreasonable refusal to pay money directly to the insured for claims made on the insurance policy itself. *Waters [v. United Servs. Auto Ass'n,* 41 Cal.App.4th 1063, 48 Cal.Rptr.2d 910 (1996)] (quoting that "[t]he gravamen of a first party [bad faith] lawsuit is a breach of the

> implied covenant of good faith and fair dealing by refusing, without proper cause, to compensate the insured for a loss covered by the policy[,] or by unreasonably delaying payments due under the policy").

*Honbo v. Hawaiian Ins. & Guar. Co.*, 86 Hawai'i 373, 377–78, 949 P.2d 213, 217–18 (App.1997).

On the other hand, "a 'third-party claim' is one where the insurer contracts to defend the insured against claims made by third parties against the insured and to pay any resulting liability, up to the specified dollar limit." *Best Place*, 82 Hawai'i at 124 n. 4, 920 P.2d at 338 n. 4. In this case, Enoka's claim for no-fault benefits constitutes a first-party claim.

insurers (the insurers) to recover for the insurers' refusal to defend and indemnify them against a former employee's claim for retaliatory discharge, employment discrimination, assault and battery, and infliction of emotional distress. *Id.* at 1220. The insured's complaint against the insurers alleged, *inter alia,* negligence, breach of contract, and breach of the implied covenant of good faith and fair dealing. *Id.* at 1220. The insurers removed the action to the Hawai'i federal district court. *Id.* The insurers, thereafter, moved for summary judgment on all claims raised in the insured's complaint. *Id.* at 1221. Therein, the insurers argued that, based on an exclusion contained in the insurance policy, the insurers had no duty to defend or indemnify the insured for the claims raised by the former employee. *Id.* The insurers, therefore, asserted that "because each of [the insured's] claims are based upon the failure to provide coverage, all claims must necessarily fail." *Id.*

The Hawai'i federal district court first held that the former employee's claims against the insured did not trigger a duty to defend "because from the face of the complaint, they clearly fell within the scope of the policy's exclusion." *Id.* at 1223. Consequently, the Hawai'i federal district court granted the insurers' motion for summary judgment on the insured's breach of contract claim. The insured, however, "maintain[ed] that [the insurers'] alleged failure to properly investigate [its] request for coverage and [the former employee's] claims constitute[d] a separate tort of bad faith." *Id.* The Hawai'i federal district court granted the insurers' motion for summary judgment on the insured's breach of the implied covenant of good faith and fair dealing claim, based on its interpretation of *Best Place* and *Board of*

*Directors of Ass'n of Apartment Owners v. United Pacific Ins. Co.,* 77 Hawai'i 358, 884 P.2d 1134 (1994). *Id.* at 1224. The Hawai'i federal district court stated:

> In *The Best Place,* the Hawai'i Supreme Court cited with approval cases recognizing that an insurer may be liable for failure to properly investigate a claim. *Id.* at 132, 920 P.2d at 346. However, the court did not directly address whether such a tort may lie where the insurer is not liable on the underlying policy.
>
> Prior to the decision in *The Best Place,* the Hawai'i Supreme Court stated, "[i]t is well established that an insurer has no duty to investigate where the claim is excluded by the clear and unambiguous language in the insurance policy." *Board of Directors of the Assoc. of Apt. Owners v. United Pac. Ins. Co.,* 77 Hawai'i 358, 361, 884 P.2d 1134, 1137 (1994). Clearly, prior to *The Best Place* decision, [the insured] could not recover for the tort of a bad faith failure to investigate where they could not prevail on the claim that [the insurers] were liable on the underlying policies. *Id.* (citing *O'Malley v. United States Fidelity & Guar. Co.,* 602 F.Supp. 56 (S.D.Miss.), *aff'd,* 776 F.2d 494 (5th Cir.1985)).[14] *The Best Place* does not overrule this reasoning. Indeed, in *The Best Place,* the Hawai'i Supreme Court cautions
>
>> [C]onduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith. In addition, an erroneous decision not to pay a claim for benefits due under a policy does not by itself justify an award of compensatory damages. Rather, the decision not to pay a claim must be in "bad faith."

14. In *Board of Directors,* this court cited to *O'Malley* with approval. In *O'Malley,* the United States District Court for the Southern District of Mississippi held that an insured cannot recover for the tort of a bad faith failure to investigate and pay losses incurred by the insured where the insured did not prevail on its claim that the insurers were liable on the underlying policies. *Board of Directors,* 77 Hawai'i at 361, 884 P.2d at 1137 (citing *O'Malley,* 602 F.Supp. at 59). The *Board of Directors* court further stated:

> The court in *O'Malley* refused to allow a separate action where the property damage losses

incurred by the plaintiffs were already deemed to have been excluded from their insurance policy in a bifurcated trial. *Id.* at 59–60; *see also Schoonover v. West American Ins. Co.,* 665 F.Supp. 511, 516 (S.D.Miss.1987) ("Although styled a tort, an action for bad-faith breach of contract is created by contract and requires proof of a breach of contract."); *Szumigala v. Nationwide Mutual Ins. Co.,* 853 F.2d 274, 280 (5th Cir.1988) (where insurer has reasonably arguable basis for denying a claim, its conduct cannot constitute bad faith).

*Id.* (some citations omitted).

*The Best Place,* 82 Hawai'i at 133, 920 P.2d at 347 (internal citations omitted). This paragraph illustrates that the court did not intend for the tort of bad faith to be triggered in every situation where there is dispute over coverage or to eclipse the remedy for breach of contract. **This court** therefore concludes that the Hawai'i Supreme Court did not intend to overrule *Board of Directors,* and accordingly **holds that because there was no coverage liability on the underlying policy, an independent cause of action for breach of the covenant of good faith and fair dealing will not lie in the instant action.**

*Id.* (bold emphases added).

Several months later, the ICA decided *Honbo v. Hawaiian Ins. & Guar. Co.,* 86 Hawai'i 373, 949 P.2d 213 (App.1997). Therein, the insured was involved in two automobile accidents. *Id.* at 374, 949 P.2d at 214. Consequently, the insured filed a claim for no-fault benefits with his insurer for injuries arising out of both accidents. *Id.* The insurer notified the insured that he had exhausted his no-fault benefits for both accidents. *Id.* The insured, thereafter, sued each driver involved in the two accidents in a single negligence lawsuit. *Id.* The parties reached a settlement agreement, and a stipulation for dismissal with prejudice was filed. *Id.* The insured and his wife [hereinafter, collectively, the plaintiffs] issued a demand letter to the insurer for underinsured motorist (UIM) coverage for the two accidents. *Id.* After receiving no response from the insurer, the plaintiffs filed a lawsuit against the insurer, seeking (1) UIM benefits (UIM claim) and (2) damages for the insurer's alleged bad faith handling of their UIM claim (bad faith claim).

The ICA held that the plaintiffs' lawsuit on their UIM claim was barred by the applicable two-year statute of limitations. *Id.* at 376, 949 P.2d at 216. In determining what statute of limitations applies to the plaintiffs' bad faith claim, the ICA noted the following in a footnote:

Some jurisdictions have ... [held] that where a plaintiff seeks tort remedies on a claim for breach of the covenant of good faith and fair dealing,

[t]here are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding the benefits must have been unreasonable or without proper cause.

*Love v. Fire Ins. Exch.,* 221 Cal.App.3d 1136, 271 Cal.Rptr. 246, 255 (1990). If we were to apply such reasoning in this case, [the plaintiffs'] bad faith claim would be precluded on the ground that there were no *due* benefits which were withheld. *See California State Auto. Assn. Inter-Ins. Bureau v. Superior Court,* 184 Cal.App.3d 1428, 229 Cal.Rptr. 409, 412 (1986) (noting no award for bad faith can be made without first establishing that coverage exists). **However, as explained by the Hawai'i Supreme Court in *Best Place,* a claim for the tort of bad faith does not turn on whether the claim for benefits was due or not, instead it turns on the conduct of the insurance company in handling the claim.** *Best Place,* 82 Hawai'i at 132–33, 920 P.2d at 346–47. **Thus, we decline to adopt this line of reasoning.**

*Id.* at 381 n. 12, 949 P.2d at 221 n. 12 (bold emphases added). The ICA subsequently held that HRS § 294–36(a) (predecessor to HRS § 431:10C–315(a)) applies to first-party insurer bad faith claims, and, in that case, the plaintiffs' bad faith claim was time barred. *Id.* at 382, 949 P.2d at 222.

Although *Local 1357* broadly held that an independent claim for breach of the covenant of good faith and fair dealing will not lie where there is no coverage liability on the underlying policy, its holding was premised on the reasoning that an insurer has no *duty to investigate* a claim that is excluded by the clear and unambiguous language in the insurance policy. Thus, it would follow that an insured could not recover for the tort of a *bad faith failure to investigate* where the insured could not establish liability on the part of the insurer on the underlying policy. Here, on the other hand, Enoka is essentially asserting that AIG acted in bad faith when it denied her claim for no-fault benefits on an invalid basis. In other words, Enoka's bad faith claim is premised upon AIG's alleged

*mishandling* of her claim, which is distinguishable from a bad faith failure to *investigate* her claim. As this court stated in *Best Place,* the insurer may commit bad faith, "whether the carrier pays the claim *or not.*" 82 Hawai'i at 132, 920 P.2d at 346 (emphasis added); *see also Francis v. Lee Enterprises, Inc.,* 89 Hawai'i 234, 971 P.2d 707 (1999) (noting that, in *Best Place,* "[w]e further explained that an action for *the tort of 'bad faith' will lie ... when an insurance company unreasonably handles* or denies payment of *a claim* ") (emphases added). Surely an insurer must act in good faith in dealing with its insured and in handling the insured's claim, even when the policy clearly and unambiguously excludes coverage. Inasmuch as Enoka has alleged that AIG handled the denial of her claim for no-fault benefits in bad faith, we conclude that she is not precluded from bringing her bad faith claim even where there is no coverage liability on the underlying policy. Accordingly, we hold that the trial court erred in determining that, because Enoka's breach of contract claim failed, her bad faith claim must fail.

### 2. Whether AIG Acted in Bad Faith

Enoka contends that AIG acted in bad faith when: (1) AIG denied her claim for no-fault benefits based on the allegedly invalid reason that the applicable statute of limitations, HRS § 431:10C–315(a), had elapsed; and (2) AIG allegedly violated HRS § 431:10C–304(3)(B), quoted *infra,* which, according to Enoka, required AIG to notify Enoka of "all the reasons" for denying her no-fault benefits claim in its denial form. AIG contends that, even assuming *arguendo* that its interpretation of sections 431:10C–315(a) and 431:10C–304(3)(B) was erroneous, such misinterpretation did not rise to the level of bad faith.

■ In *Best Place,* this court articulated the applicable standard for a first-party bad faith claim as follows:

[T]he insured need not show a conscious awareness of wrongdoing or unjustifiable conduct, nor an evil motive or intent to harm the insured. An unreasonable delay in payment of benefits will warrant recovery for compensatory damages under the

*Gruenberg* test [referring to *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973)]. However, conduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith. In addition, an erroneous decision not to pay a claim for benefits due under a policy does not by itself justify an award of compensatory damages. Rather, the decision not to pay a claim must be in "bad faith."

*Id.* at 133, 920 P.2d at 347 (citations omitted); *see California Shoppers, Inc. v. Royal Globe Ins. Co.,* 175 Cal.App.3d 1, 221 Cal.Rptr. 171 (1985) (noting that "bad faith implies unfair dealing rather than mistaken judgment") (brackets, internal quotation marks, and citations omitted). Moreover, where an insurer denies the payment of no-fault benefits based on "an open question of law," there is "obviously no bad faith on the part of [the insurer] in litigating that issue." *Colonial Penn. Ins. Co. v. First Ins. Co. of Hawai'i, Ltd.,* 71 Haw. 42, 43–44, 780 P.2d 1112, 1114 (1989); *see also Gov't Employees Ins. Co. v. Dizol,* 176 F.Supp.2d 1005, 1035 (D.Haw.2001) (pointing out that there is no bad faith when an insurer denies the payment of benefits based on an unsettled question of law).

We, therefore, examine whether AIG's denial of benefits, which Enoka maintains was the result of AIG's erroneous interpretations of (1) HRS § 431:10C–315(a) and (2) HRS § 431:10C–304(3)(B), was based on an open question of law.

#### a. *HRS § 431:10C–315(a)*

■ First, Enoka contends that AIG violated section 431:10C–315(a) by erroneously denying Enoka's claim for no-fault benefits on the basis that the two-year statute of limitations had already lapsed. As previously stated, at the time of Enoka's April 19, 1997 accident, the applicable statute of limitations was codified at HRS § 431:10C–315(a).

The question whether the March 2000 UIM benefits from GEICO, a non-party insurer, would trigger the two-year statute of limitations under HRS § 431:10C–315(a) for Enoka's claim against AIG, the only defen-

dant insurer in the instant lawsuit, was—until today—an open question of law. *See supra* section III.A (holding that, pursuant to a plain reading of HRS § 431:10C–315(a)(1) and (2), Enoka's claim for no-fault benefits was not barred by the statute of limitations). Consequently, there is no bad faith on the part of AIG for having denied Enoka's claim for no-fault benefits on the basis of the statute of limitations. *See Colonial Penn.*, 71 Haw. at 43–44, 780 P.2d at 1114; *see also Gov't Employees Ins. Co.*, 176 F.Supp.2d at 1035.

### b. *HRS § 431:10C–304(3)(B)*

 Second, Enoka contends that AIG acted in bad faith by allegedly violating HRS § 431:10C–304(3)(B). Specifically, Enoka asserts that AIG violated section 431:10C–304(3)(B) by not providing Enoka "all of the reasons" why it denied her claim for no-fault benefits in its denial form. At the time of Enoka's April 19, 1997 accident, section 431:10C–304(3)(B) provided in pertinent part:

> (3) (B) . . . [I]f the insurer elects to deny a claim for benefits in whole or in part, the insurer shall within thirty days notify the claimant in writing of the denial *and the reasons* for the denial. . . .

(Emphasis added.) Enoka cites to cases from other jurisdictions that lend some support for her contention that "the" means "all." Enoka, however, does not cite to any Hawai'i case law for the same proposition, and this court has not yet construed the phrase "the reasons" as used in section 431:10C–304(3)(B). Thus, it is unsettled, under Hawai'i law, whether "*the* reasons" means "*all* reasons," as Enoka contends.[15] Consequently, inasmuch as AIG's denial was based upon an open question of law, there is no bad faith on the part of AIG for not having stated all the reasons for its denial of Enoka's claim for no-fault benefits. *See Colonial Penn.*, 71 Haw. at 43–44, 780 P.2d at 1114; *see also Gov't Employees Ins. Co.*, 176 F.Supp.2d at 1035.

Accordingly, we hold that AIG did not act in bad faith when it denied Enoka's claim for no-fault benefits.

### D. *Enoka's Waiver and Estoppel Contentions*

Enoka contends that the trial court erred in concluding that AIG did not waive its right to rely upon, or was not estopped from relying upon, the exclusions in the AIG policy as defenses to Enoka's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Enoka argues that AIG was required to notify her of its reliance on Exclusion A when it denied her claim or, at the very latest, when AIG answered her complaint. Because AIG did not do so until the filing of its motion for summary judgment, Enoka maintains that AIG waived its right to rely upon Exclusion A, or is estopped from raising it, as a defense. Moreover, Enoka argues that she "raised a genuine issue of material fact of whether she detrimentally relied to her prejudice on AIG's notification that it had one and only one basis for denying her claim."

AIG contends that the doctrines of waiver and estoppel may not be used to extend insurance coverage beyond the terms of an insurance contract. AIG argues that, even assuming *arguendo* that the waiver doctrine is applicable, implied waiver may only be employed to prohibit an insurer, who had previously denied coverage on a specific ground, from subsequently asserting a "technical ground," *i.e.*, a ground that does not involve a coverage issue. Further, AIG maintains that this court need not reach the issue of whether estoppel applies as long as there is no contractual duty to pay no-fault benefits in the first instance. However, should this court hold otherwise, AIG argues that Enoka has not shown detrimental reliance or prejudice to the level of "manifest injustice" to invoke equitable estoppel.

 Preliminarily, we note that Enoka refers to the doctrines of waiver and estoppel interchangeably throughout her opening brief. As we observed in *Best Place*,

---

**15.** The trial court noted, "as I read [section 431:10C–304(3)(B)], there's nothing that requires every reason to be set forth."

[i]n the context of insurance law, and especially with regard to limitation provisions in insurance policies, the terms "waiver" and "estoppel" have often been used without careful distinction, and thereby abused and confused. This doctrinal confusion, epitomized by the frequently echoed phrase "waiver by estoppel," is so deeply rooted some courts have suggested that the term waiver, as applied in Illinois to insurance cases, is simply another term for estoppel.

Notwithstanding the confusion already engendered by any of these cases, it is elementary that waiver and estoppel are two separate and distinct doctrines. The fact that these doctrines are closely akin and often may coexist does not mean they are identical in connotation.

Waiver encompasses either an express or implied voluntary and intentional relinquishment of a known and existing right. Waiver is essentially unilateral in character, focusing only upon the acts and conduct of the insurer. Prejudice ... or detrimental reliance is *not* required.

Equitable estoppel, on the other hand, generally is based upon an insurance carrier's conduct and/or representations which misled an insured to his [or her] detriment.

*Id.* at 139, 920 P.2d at 353 (brackets, ellipses points, and emphasis in original) (citation omitted). Bearing the foregoing in mind, we attempt to extricate Enoka's waiver and estoppel arguments and address each argument separately.

### 1. Waiver

█ Enoka claims that, under Hawai'i law, "an insurer may waive the terms of its policy based on its conduct during the defense of its insured—even though 'no coverage existed in the first instance.'" Enoka contends that there is a distinction between a lack of coverage in the first instance (requiring no disclaimer) and a lack of coverage based upon an exclusion (requiring timely disclaimer). Specifically, Enoka argues that,

where "an insurer fails to timely raise a policy exclusion as a defense, *e.g.*, in its denial letter or in its answer to the insured's complaint, it waives that exclusion as a defense to the insured's lawsuit." [16]

AIG contends that a significant majority of jurisdictions holds against using the waiver doctrine to create coverage where none exists. AIG claims that the waiver doctrine "arises, if at all, where coverage is denied for so-called technical reasons that concern at most an insured's post-loss conduct—such as failure to cooperate—and not reasons going to the existence of coverage."

The majority of jurisdictions hold that the doctrine of waiver may not be used to broaden the coverage of an insurance policy so as to protect the insured against risks not included therein or expressly excluded therefrom. *Potesta v. United States Fid. & Guar. Co.,* 202 W.Va. 308, 504 S.E.2d 135, 146 (1998); *see also Brown Mach. Works & Supply Co. v. Ins. Co. of N. Am.,* 659 So.2d 51, 53 (Ala.1995) (observing that "the general rule in Alabama is that coverage under an insurance policy cannot be enlarged by waiver"); *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.,* 93 Ohio App.3d 292, 638 N.E.2d 174 (1994) (noting that the general rule provides that waiver cannot extend coverage of an insurance policy); *Creveling v. Gov't Employees Ins. Co.,* 376 Md. 72, 828 A.2d 229, 243 (App.Ct.2003) (stating the general rule that "waiver cannot operate to expand or establish insurance coverage"); *Estate of Hall v. HAPO Fed. Credit Union,* 73 Wash.App. 359, 869 P.2d 116, 118 (1994) (noting the majority rule that "under no conditions can the coverage or restrictions on the coverage be extended by the doctrine of waiver") (citations omitted); *Utica Mut. Ins. Co. v. Klein & Son, Inc.,* 157 Wis.2d 552, 460 N.W.2d 763, 767 (App.Ct.1990) (noting that "the courts of most jurisdictions agree that [waiver is] not available to broaden the coverage of a policy so as to protect the insured against risks not included therein or express-

---

16. In her opening brief, Enoka states that AIG waived its policy exclusions and, thus, cannot use them as defenses to her claims for (1) breach of contract and (2) bad faith. However, Enoka fails to provide any argument as to how AIG's alleged

waiver precludes AIG from using its policy exclusions as a defense to Enoka's bad faith claim. Thus, our discussion of Enoka's waiver argument is limited to only her breach of contract claim.

ly excluded therefrom"); Annot., *Comment Note: Doctrine of Estoppel or Waiver as Available to Bring Within Coverage of Insurance Policy Risks not Covered by its Terms or Expressly Excluded Therefrom,* 1 A.L.R.3d 1139 (1965 & Supp.2005). *But see Tate v. Charles Aguillard Ins. & Real Estate, Inc.,* 508 So.2d 1371, 1375 (La.1987) (holding that "waiver may apply to any provision of an insurance contract under which the insurer knowingly and voluntarily elects to relinquish [its] right, power or privilege to avoid liability, even though the effect may bring within coverage risks originally excluded or not covered"). The rationale for the general rule has been summarized as follows:

> [T]he [insurance] company should not be required by waiver and estoppel to pay a loss for which it charged no premium, and the principle has been announced in scores of cases involving almost every conceivable type of policy or coverage provision thereof.

Annot., *Comment Note, supra* at 1144; *see also Potesta,* 504 S.E.2d at 147 (noting that additional reasons why waiver should not extend coverage of an insurance policy are "that a court cannot create a new contract for the parties ... and that a risk should not be imposed upon an insurer which it might have denied") (quoting *Turner Liquidating Co.,* 638 N.E.2d at 179).

 Although cognizant of the general rule, some jurisdictions note that the rule may be subject to exceptions.[17] One exception, which is relevant to the instant case, is that "implied waiver"[18] may be invoked to

prevent an insurer, who had previously declined coverage on specific grounds, from later asserting a "technical" or "forfeiture" ground for declining coverage, but it may not be used to prevent the insurer's later denial based on the non-existence of coverage. *Potesta,* 504 S.E.2d at 149–50; *see also Creveling,* 828 A.2d at 244; *Utica Mut. Ins. Co.,* 460 N.W.2d at 767; 16B Appleman, *supra,* § 9083 at 518 (1981) (recognizing that "[c]onditions going to the coverage or scope of a policy as distinguished from those furnishing a ground for forfeiture may not be waived by implication from conduct or action"); *but see Century Fire Sprinklers, Inc. v. CNA/ Transp. Ins. Co.,* 23 S.W.3d 874 (Mo.App. 2000) (holding that an insurance policy exclusion is an affirmative defense which must be pled or it *may* be waived). In determining whether the doctrine of implied waiver applies, the decisive issue is whether a proffered defense pertains to coverage or whether it arises from a technical or forfeiture ground. *Creveling,* 828 A.2d at 244. The *Creveling* court noted that,

> where the provision relates to the scope of the risks to be covered (either by inclusion or exclusion) or to the dollar amount of coverage, it is to be dealt with as a "coverage" matter; otherwise, and particularly if it operates to furnish a ground for the forfeiture of coverage or for the defeasance of liability ... it will be treated as a "forfeiture" clause.

*Creveling,* 828 A.2d at 244 (quoting *Wright v. Newman,* 598 F.Supp. 1178, 1199 (W.D.Mo. 1984)). The *Creveling* court further provided that "*forfeiture clauses* often include provi-

---

17. One leading treatise—16B Appleman, *Insurance Law & Practice,* § 9090 at 35 (Supp.1999) [hereinafter, Appleman]—has criticized the general rule. According to Appleman, "the doctrine [that] implied waiver or estoppel is not available to bring within the coverage of an insurance policy risks that are not covered by its terms or that are expressly excluded therefrom has been referred to as a majority rule that is eroding." *Id.* (internal quotation marks omitted). Appleman, however, appears to be criticizing the general rule *without any exceptions* as provided by other jurisdictions. In addition, one court has stated that Appleman's "perceived erosion of the majority rule is simply a misapplication of estoppel and waiver to situations in which through misrepresentation, inadvertence, accident or mistake, the terms of a contract of insurance are

not fully or correctly set forth in the policy." *Utica Mut. Ins. Co.,* 460 N.W.2d at 768.

18. In *Best Place,* this court defined "implied waiver" as resulting from "such conduct as warrants an inference of intentional relinquishment of a known right, and it is not essential to its application that prejudice results to the party in whose favor the waiver operates." *Id.* at 139, 920 P.2d at 353 (brackets, internal quotation marks, and citation omitted). In this case, Enoka does not appear to argue that AIG expressly waived its right to assert policy exclusions as a defense to Enoka's claims, but rather that AIG impliedly waived its right to assert policy exclusions. Thus, we limit our discussion to implied waiver in the present case.

sions such as filing a timely notice of claim and submitting proofs of loss, and *are invoked to avoid liability for existing coverage.*" *Id.* at 244–45 (citations omitted) (emphases added); *see also Potesta,* 504 S.E.2d at 150 n. 16 (defining "technical ground" to indicate "a ground that does not involve a coverage issue, such as the insured's failure to timely submit the insurer a proof of loss form").

The foregoing principles comport with this court's decision in *Best Place,* wherein the subject policy required the insured to submit a proof of loss within sixty days of the claimed loss, which the insured failed to do. *Id.* at 123, 920 P.2d at 337. Although the insurer could have denied the insured's claim at that point, it elected not to do so. *Id.* at 140, 920 P.2d at 354. Instead, the insurer "chose to implicitly waive that [sixty-day] provision as evidenced by its letter, which sought more information with respect to documents tending to establish the legitimacy of [the insured's] claim." *Id.* Consequently, this court held that the insurer's post-deadline request for additional information constituted an implied waiver of any defense based on the sixty-day time limitation and that the insurer was precluded from introducing evidence of the insured's breach of duty with regard to the proof of loss. *Id.; see also Nestegg Fed. Credit Union v. Cumis Ins. Soc'y, Inc.,* 87 F.Supp.2d 144, 148 (N.D.N.Y. 2000) (holding that, because the defense of failure to file a timely complaint existed at the time of the insurer's disclaimer letter, and because it was not raised in the disclaimer letter, the insurer waived the forfeiture defense).

In the instant case, Exclusion A, upon which AIG relied in its motion for summary judgment, relates to the scope of no-fault benefits to be provided under the AIG policy and, therefore, clearly involves a coverage issue, as opposed to a technical or forfeiture ground. Consequently, based on the foregoing discussion, we hold that AIG did not waive its right to rely on Exclusion A as a basis to deny coverage for no-fault benefits in its motion for summary judgment.

## 2. Estoppel

Enoka contends that an insurer may be estopped from denying coverage even when "no coverage existed in the first instance." In addition, Enoka claims that an "insurer's bad faith can estop it from raising coverage defenses." She further argues that she detrimentally relied on AIG's omission of any reference to Exclusion A in its denial form. Finally, Enoka contends that she was prejudiced by incurring the financial cost of pursuing the instant lawsuit.

AIG argues that, because AIG never caused Enoka to believe that she had coverage in the first instance, she did not suffer any detrimental reliance as a result of AIG's subsequent use of Exclusion A as a defense against Enoka's claims. AIG specifically contends that "it never took inconsistent positions on the question of [Enoka's] entitlement to benefits and, on the contrary, always insisted [Enoka] was not entitled to the no-fault benefits she sought." AIG further argues that the fact that Enoka incurred financial cost in pursuing the instant lawsuit is not sufficient to show the required element of prejudice to establish estoppel.

The majority of jurisdictions hold that the doctrine of estoppel may not be used to broaden the coverage of an insurance policy so as to protect the insured against risks not included therein or expressly excluded therefrom. *Potesta,* 504 S.E.2d at 146 (collecting cases). The *Potesta* court, however, recognized three exceptions, based on estoppel principles, that may be used to broaden the coverage of an insurance policy. *Id.* at 147–48 (noting that "[a]n insurer should not be able to avoid liability under all circumstances in which it . . . induces another into changing his position based upon reliance on the insurer's conduct when the insured is prejudiced by such reliance"). Although noting that the following exceptions are not exhaustive, the court in *Potesta* identified three "commonly recognized exceptions" as follows:

(1) One . . . exception[ ] to the general rule operates to prevent an insurer from asserting a previously unmentioned coverage based defense, where the insurer, or its agent, made a misrepresentation at the policy's inception that resulted in the in-

sured being prohibited from procuring the coverage s/he desired[;]

. . . .

(2) A second . . . exception applies when an insurer has represented the insured without a reservation of rights[;]

. . . .

(3) A third . . . exception applies when the insurer has acted in bad faith.[19]

*Id.* at 148–49 (numbering added). Inasmuch as the first two exceptions are not relevant to the case at bar, we discuss them only briefly. Moreover, some of these exceptions have already been recognized in our case law. *See e.g., AIG Hawai'i Ins. Co. v. Smith,* 78 Hawai'i 174, 891 P.2d 261 (1995) (holding that the insurer was estopped from denying coverage under the insured's policy where it was plainly evident that a ground for non-coverage existed but the insurer chose instead to assume unconditional control over the insured's defense without securing a reservation of rights); *Lecker v. Gen. Am. Life Ins. Co.,* 55 Haw. 624, 525 P.2d 1114 (1974) (holding that the insurer, having misinformed the insured of the limitations affecting coverage for death benefits, through use of a book-certificate at the policy's inception, is estopped from asserting a policy exclusion not shown or otherwise indicated in the booklet-certificate as a basis for non-payment of death benefits).

In *Best Place,* this court noted that:

[T]he general rule is that an insurer which denies liability on a specified ground may not thereafter shift the basis for its disclaimer to another ground known to it at the time of its original repudiation. . . .

The vast majority of jurisdictions recognize, however, that *this rule of estoppel is limited in its application to those instances where the insured has suffered some degree of prejudice as a result of the insurer's attempt to shift its defense from one basis to another.* This rule of estoppel has its limitations and exceptions, which are as clearly established as the rule itself, one of which is that *before the rule can apply it must appear that claimant was misled to his [or her] injury.*

. . . .

While it is true that an insurer's specification of one of several available grounds for disclaimer may be taken by the insured as an indication that the other grounds have been overlooked, as a basic matter of fairness we see no reason why this circumstance should operate to bar the later assertion of the other grounds for disclaimer where the insured cannot claim to have suffered any degree of prejudice. The overwhelming majority of American jurisdictions refuse to impose this sort of estoppel in the absence of prejudice, and it is clear that the rule as formulated continues to be valid.

*Id.* at 140, 920 P.2d at 354 (internal quotation marks and citation omitted) (emphases added). In *Smith,* we stated

that the party invoking equitable estoppel must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, *and* that such reliance was reasonable. Such requirement, however, may be dispensed with in order to prevent manifest injustice.

*Id.* at 179, 891 P.2d at 266 (internal quotation marks and citations omitted) (emphasis in original). Moreover, we have previously recognized that

[e]stoppel is particularly appropriate where the insurer, either directly or through an agent, . . . admits coverage under a policy of insurance, yet later denies coverage. *However, where the insurer maintains the position that it will not defend an insured because there is no coverage under a policy, estoppel should not apply because the insurer has not changed its position regarding whether it would cover its insured, and, therefore, the insured has not relied on any of the insurer's representations to his or her detriment.*

*State Farm Mut. Auto. Ins. Co. v. GTE Hawaiian Telephone Co.,* 81 Hawai'i 235, 243, 915 P.2d 1336, 1344 (1996) (emphasis added). However, as this court recognized in *Smith,* the doctrine of estoppel may also apply in order to prevent "manifest injus-

**19.** As discussed *supra,* AIG did not act in bad faith.

tice." *See Smith,* 78 Hawai'i at 179–80, 891 P.2d at 266–67 (holding that insurer's actions in conducting the insured's defense, where the insurer, *inter alia,* potentially exposed the insured to criminal liability, constituted manifest injustice to the insured's interest and, thus, estoppel was appropriate).

In the present case, Enoka fails to point to any actions taken by AIG on which she detrimentally relied other than AIG's omission of any reference to Exclusion A in its denial form in which AIG proffered statute of limitations as the basis for denying her claim for no-fault benefits. The record, however, demonstrates that AIG maintained its position of no coverage for no-fault benefits to Enoka throughout the course of its correspondence with her. AIG never changed its position regarding coverage and never made any representations to the contrary. Moreover, Enoka has failed to make the requisite showing of manifest injustice in order to dispense with the foregoing requirements of estoppel. As previously stated, Enoka contends that she was prejudiced by incurring the financial cost of pursuing the instant lawsuit. However, "[t]he mere trouble and expense of bringing suit does not amount to the prejudice required to invoke the estoppel doctrine." *Depriest v. State Farm & Fire Cas. Co.,* 779 S.W.2d 347, 350 (Mo.App.1989); *see also Shahan v. Shahan,* 988 S.W.2d 529 (Mo.1999) (en banc). Accordingly, we hold that AIG is not estopped from raising Exclusion A in the present case to bar Enoka's breach of contract claim.

### E. *Enoka's IIED Claim*

Enoka's final contention on appeal is that the trial court erred when it granted summary judgment in favor of AIG on her IIED claim. Enoka argues that her

> claim for [IIED] is not based on the mere fact of AIG's denial of her claim for benefits. Rather, it is based on the fact that the sole basis for AIG's denial was the statute of limitations, which AIG either knew or should have known had not expired when Enoka made her claim for benefits.

Enoka contends that summary judgment with respect to her IIED claims should not have been granted because she raised genuine issues of material fact as to whether AIG's conduct was unreasonable or outrageous, to wit:

> AIG's conduct of failing to notify Enoka of all of its reasons for denying her claim; failing to provide her a reasonable explanation of the policy provisions on which it based its denial; denying Enoka's claim for benefits solely on a ground that AIG knew or should have know[n] was not valid; filing an Answer that continued to assert only the invalid statute of limitations defense; obtaining Enoka's stipulation to set aside the entry of default against AIG while still asserting only the invalid statute of limitations defense; and delaying disclosure of its four additional policy grounds for denying her claim until it filed a motion for summary judgment, even though it was well aware of these policy defenses when it initially denied Enoka's claim[.]

AIG contends that, under *Francis v. Lee Enterprises, Inc.,* 89 Hawai'i 234, 971 P.2d 707 (1999), an IIED claim can arise from a breach of contract in only two exceptional situations, neither of which are present in this case. AIG states that the two exceptions recognized in *Francis* are: (1) where there has been a bodily injury (as in a medical malpractice case); or (2) where serious emotional disturbance is particularly foreseeable (as in an action for breach of promise to marry). AIG further contends that, apart from *Francis,*

> the undisputed record shows the complete absence of the necessary elements for an IIED claim which requires "unreasonable" conduct defined in *Ross v. Stouffer Hotel Co., Ltd.,* 76 Hawai'i 454, 879 P.2d 1037, 1048 (Haw.1994), to be an act that "is without just cause or excuse and beyond all bounds of decency," *ibid.,* which is to say, "the act complained of must be 'outrageous'...." *Ibid.*

In response, Enoka reiterates that her IIED claim "does not arise out of AIG's breach of the insurance contract. Her claim is based on AIG's conduct in denying her claim based solely on an unreasonable basis."

Under Hawai'i law, the elements of IIED are

(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another.

*Hac v. Univ. of Hawai'i,* 102 Hawai'i 92, 106–07, 73 P.3d 46, 60–61 (2003). The term "outrageous" has been construed to mean "without just cause or excuse and beyond all bounds of decency." *Lee v. Aiu,* 85 Hawai'i 19, 34 n. 12, 936 P.2d 655, 670 n. 12 (1997) (internal quotation marks and citations omitted). Moreover, "extreme emotional distress" constitutes, *inter alia,* mental suffering, mental anguish, nervous shock, and other "highly unpleasant mental reactions." *Hac,* 102 Hawai'i at 106, 73 P.3d at 60 (footnote and citation omitted).

Under the circumstances of this case, we believe AIG's conduct does not rise to the level of "outrageousness" as construed in our case law. Based on our previous discussion, we do not believe that the manner in which AIG denied Enoka's claim for no-fault benefits was in bad faith and, thus, AIG's conduct was reasonable. Moreover, there is nothing in the record to indicate that Enoka suffered any extreme emotional distress as a result of AIG's conduct. Accordingly, inasmuch as Enoka fails to show that a genuine issue of material fact exists with respect to her IIED claim, we hold that the trial court did not err in granting summary judgment in favor of AIG on Enoka's IIED claim.

### F. AIG's Cross–Appeal

#### 1. AIG's Request For Attorneys' Fees

On cross-appeal, AIG contends that the trial court erred in denying its motion for attorneys' fees and costs by taking into consideration equitable grounds unrelated to the reasonableness of the amount of the attorneys' fees sought. AIG argues that it was entitled to attorneys' fees under HRS § 607–14 (Supp.2004) because, under *Finley v. Home Ins. Co.,* 90 Hawai'i 25, 975 P.2d 1145 (1998), section 607–14 "mandates an entitlement to some level of attorneys' fees that the [trial] court determines to be reasonable in amount," and, thus, the trial court has no

discretion concerning whether or not to award reasonable attorneys' fees. HRS § 607–14, entitled "Attorney's fees in actions in the nature of assumpsit, etc.," states in relevant part:

In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, *there shall be taxed as attorneys' fees,* to be paid by the losing party and to be included in the sum for which execution may issue, *a fee that the court determines to be reasonable;* provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. *The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party;* provided that this amount shall not exceed twenty-five percent of the judgment.

(Emphases added.)

AIG contends that it met all the requirements of section 607–14 inasmuch as "the instant proceeding is essentially in the nature of an assumpsit action [and] AIG was the prevailing party[.]" AIG argues that "all of [Enoka's] claims arose from Defendant AIG's alleged breach of its insurance contract to provide no-fault benefits. Absent the existence of this alleged breach, not one of [Enoka's] remaining claims could survive. All flow inherently and inextricably from the alleged breach of contract."

Enoka contends that HRS § 431:10C–211(d) (1993), not HRS § 607–14, governs AIG's request for attorneys' fees inasmuch as there is an "irreconcilable conflict" between the two statutes and, thus, the more specific statute is applicable. HRS § 431:10C–211(d) provides in relevant part:

*An insurer* or self-insurer *may be allowed an award of a reasonable sum as attorney's fees* based upon actual time expended, and all reasonable costs of suit for its defense *against a person making a claim against the insurer* or self-insurer,

within the discretion of the court upon judicial proceeding or the commissioner upon administrative proceeding *where the claim is determined to be fraudulent or frivolous.*

(Emphases added.)

Enoka argues that her claim for no-fault benefits, although denied, was not fraudulent or frivolous and, thus, AIG would not be entitled to attorneys' fees under section 431:10C–211(d). Although Enoka agrees with AIG that section 607–14 mandates an award of attorneys' fees to the prevailing party in assumpsit claims, she alleges that the trial court correctly considered the equities of the situation in determining not to award any attorneys' fees to AIG.

Both HRS §§ 607–14 and 431:10C–211(d) apply to the award of attorney's fees. HRS § 607–14 applies generally to actions in the nature of assumpsit and actions on promissory notes or other contracts in writing, and HRS § 431:10C–211(d) applies specifically to claims under motor vehicle insurance contracts. *See also* discussion *infra,* section III. F.2. Thus, as we have previously stated,

> [w]e ... confront the task of interpreting [a] general statute[ ] that may appear to be in conflict with [a] specific statute[ ] relating to the same subject matter.... [L]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another.... *[W]here there is a plainly irreconcilable conflict between a general and a specific statute concerning the same subject matter, the specific will be favored.* However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored.

*Richardson v. City & County of Honolulu,* 76 Hawai'i 46, 54–55, 868 P.2d 1193, 1201–02 (1994) (emphasis added) (internal quotation marks and citations omitted) (some brackets in original).

**20.** In 1997, the legislature substituted the term "personal injury protection benefits" for "no-fault benefits[.]" *Iaea v. TIG Ins. Co.,* 104 Ha-

Based on a plain reading of HRS § 431:10C–211(d), an insurer or self-insurer is not entitled to an award of fees if an insured's claim is not fraudulent or frivolous. However, under HRS § 607–14, if the prevailing party meets all the requirements set forth therein, the statute *mandates* an award of reasonable attorneys' fees. *See Finley,* 90 Hawai'i at 38, 975 P.2d at 1158. Here, AIG states that, "[f]or purposes of this appeal only, [it] does not contend [Enoka] presented frivolous or fraudulent claims in her [c]omplaint." Consequently, to allow an award of attorneys' fees to AIG under HRS § 607–14 would conflict with the more specific provisions of HRS § 431:10C–211(d), which precludes an award of fees to AIG in the instant case inasmuch as Enoka's claims were not fraudulent or frivolous.

Moreover, it is important to note that HRS § 431:10C–211(a) (Supp.2004) confers upon an insured the right to seek attorneys' fees regardless of whether the insured prevailed on his or her claims, except when the claim is unreasonable, fraudulent, excessive, or frivolous. Specifically, HRS § 431:10C–211(a) provides:

> *A person making a claim for personal injury protection benefits* [20] *may be allowed an award of a reasonable sum for attorney's fees, and reasonable costs* of suit in an action brought by or *against an insurer who denies all or part of a claim for benefits* under the policy, *unless the court upon judicial proceeding or the commissioner upon administrative proceeding determines that the claim was unreasonable, fraudulent, excessive, or frivolous.* Reasonable attorney's fees, based upon actual time expended, shall be treated separately from the claim and be paid directly by the insurer to the attorney.

(Emphases added.) Consequently, when construing HRS §§ 607–14 and 431:10C–211 with reference to each other, there is clearly an irreconcilable conflict between them. In this case, the conflict arises because AIG, as the prevailing party, could be awarded fees under section 607–14, but, at the same time,

wai'i 375, 378 n. 3, 90 P.3d 267, 270 n. 3 (App.2004).

is not entitled to fees under section 431:10C–211(d) because Enoka's claim was not fraudulent or frivolous. Moreover, allowing AIG to recover fees under section 607–14 would lead to the absurdity of a fee award to both the prevailing party and the non-prevailing party in the same case, if Enoka were awarded her attorney's fees under section 431:10C–211(a).

Accordingly, because allowing AIG to seek attorney's fees under HRS § 607–14 in the instant case would contravene the attorney's fee award scheme set forth in HRS § 431:10C–211, we hold that the trial court did not abuse its discretion in denying AIG's motion for attorneys' fees and costs.

### 2. Enoka's Request for Remand for an Assessment of Her Request for Fees and Costs Incurred in the Instant Appeal and Cross–Appeal

■ In her answering brief filed in response to AIG's cross-appeal, Enoka requests this court to remand this case to the trial court "for action on her request for attorneys' fees and costs incurred on her appeal and on AIG's cross-appeal." Enoka claims that she is entitled to an award of attorneys' fees and costs pursuant to HRS § 431:10C–211(a), inasmuch as section 431:10C–211(a) applies to Enoka's request for attorneys' fees and costs incurred on appeal, regardless of whether she prevailed on her claims. In response, AIG states that it "does not oppose [Enoka's] request for a remand of her future fee request should [this court] determine that the circuit court has jurisdiction over the matter."

Under the plain language of HRS § 431:10C–211(a), reasonable attorneys' fees *"may* be allowed" to a person "making a claim for personal injury protection benefits[,]" or, as previously described, no-fault benefits. *Iaea,* 104 Hawai'i at 379, 90 P.3d at 271 (quoting HRS § 431:10C–211(a)). Moreover, under section 431:10C–211(a), "a claimant who does not prevail on a claim for no-fault benefits may, but is not required to, be awarded attorney's fees and costs by the Commissioner or the circuit court." *Id.* at 380, 90 P.3d at 272. Section 431:10C–211(a) also applies "to all attorney's fees whether for trial or appeal." *Kawaihae v. Hawaiian*

*Ins. Cos.,* 1 Haw.App. 355, 363, 619 P.2d 1086, 1092 (1980) (deciding under HRS § 294–30(a) (now HRS § 431:10C–211(a))). Under section 431:10C–211(a), "the trial court has discretion to award attorney's fees and costs to a claimant." *Wong v. Hawaiian Ins. Cos.,* 64 Haw. 189, 192, 637 P.2d 1144, 1146 (1981) (citation omitted). Thus, on remand, the trial court may decide the issue of Enoka's request for attorneys' fees and costs incurred with respect to the instant appeals in the exercise of the trial court's discretion pursuant to HRS § 431:10C–211(a).

### IV. *CONCLUSION*

Based on the foregoing, we: (1) affirm the trial court's August 19, 2002 final judgment in favor of AIG; (2) affirm the trial court's July 30, 2002 order denying AIG's motion for attorneys' fees and costs; and (3) remand this case to the trial court to determine the issue of Enoka's request for attorneys' fees and costs incurred with respect to the instant appeals in the exercise of the trial court's discretion, pursuant to HRS § 431:10C–211(a).

